ROSSVILLE COMMERCIAL ALCOHOL CORP. v. DENNIS SHEEN TRANSFER CO., INC., ET AL.

———

(November 30, 1931. Opinion and Decree.)
(January 11, 1932. Rehearing Refused.)
(February 29, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

———

Brian & Brian, of New Orleans, attorneys for plaintiff, appellant.

Milner & Porteous and F. Carter Johnson, Jr., of New Orleans, attorneys for defendants, appellees.

JANVIER, J. Plaintiff, an alcohol manufacturing company, appeals from a judgment dismissing, on exception of no cause of action, its suit to recover from defendant, a trucking and draying corporation, and from defendant's insurers, payment for the damage caused when an overhead pipe line of plaintiff was struck by a large iron boiler, which was being transported on a truck of defendant drayage corporation. The original petition alleges that the pipe line in question had been erected some seventeen years prior to the accident; that it extended from plaintiff's manufacturing establishment across a public highway at an elevation of twelve and one-half feet above the roadway; that a large sign was placed nearby to warn persons using the highway to be on the lookout for the pipe line; that the boiler, which was being transported on the said truck,

extended some thirteen or fourteen feet into the air, and that the proximate cause of the damage to the said pipe line was the carelessness of the driver of the said truck in not noticing either the said pipe line itself or the warning sign referred to.

In the petition, however, is found no allegation to the effect that, at the time of the erection of the pipe line, permission had been secured from the "proper authority," as required by Revised Statutes, sec. 916, nor does there appear an averment to the effect that a permit has since been obtained from the board of state engineers, as is required by the terms of Act No. 185 of 1928. The pertinent portion of the act of 1928 reads as follows:

"Whoever shall make, on the bank of any river or navigable stream of this State, any work tending to alter the course of the water or increase its rapidity, or make its navigation more difficult; or who shall make on the river bank, or on any highway or bridge, or in other place of public use, without the permission of the Board of State Engineers, any work tending to hinder and embarrass such public use, shall, upon conviction, be compelled to pay the sum of one hundred dollars for each offense; and the court shall further order the nuisance to be removed at the expense of the party convicted."

Except for two changes, that act is identical with the earlier law, Revised Statutes, sec. 916. These two changes are as follows:

In the earlier law it is required that permission be obtained before the erection of any work which tends to hinder or embarrass the public use of the road, whereas, in the act of 1928 the word "and" is used instead of the word "or" between the word "hinder" and the word "embarrass." The other change is that, in the earlier enactment, the permission was required to be obtained from "the proper authority,"

whereas, in the later act, it is required that the permission be obtained from the "Board of State Engineers."

Defendants contend that it is apparent from the petition itself that the said structure is, to some extent, a hindrance and an embarrassment to the public in the free use of the highway; that the petition fails to disclose that the necessary permission for the construction and maintenance of the line has ever been obtained, and defendants also maintain that the erection and continued existence of the said pipe line is violative of Act No. 240 of 1914, which amends section 3379 of the Revised Statutes so as to read as follows:

"Be it enacted by the General Assembly of the State of Louisiana, that Section 3379 of the Revised Statutes of the State of Louisiana be amended and re-enacted to read as follows:—

"Article 3379:—If any person shall erect or cause to be erected any bars across any public roads, or lay any timber thereon or obstruct in any manner the free passage thereof he shall be deemed guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than One Hundred ($100.00) Dollars, or imprisonment not more than ninety days, or both in the discretion of the court, and he shall further forfeit and pay the sum of Fifty Dollars to be recovered by any person suing for the same and to the use and benefit of the person so suing."

It is argued that thus the petition itself discloses a violation by petitioner of the state statutes, which violation, it is alleged, constitutes negligence per se, and prevents recovery, regardless of the fault of the driver of the truck; in other words, that the petition shows contributory negligence, i. e., the violation of the statutes, and that this contributory negligence bars recovery.

The drayage company's insurer, also made defendant, excepts on the additional

ground that no right of action exists in plaintiff to maintain a direct action against it, the insurer. Plaintiff counters with the charge that, not only do the laws of this state create a right of action directly against the insurer, but that, after the accident, the representatives of the insurer agreed to accept liability for the damage, and instructed plaintiff to have the repair work done and to send the bills therefor to the insurer.

We shall first consider and discuss the question of whether or not the petition alleges facts sufficient to warrant the holding that the failure to obtain the permit referred to bars recovery in any event, and whether or not Act No. 240 of 1914 makes such a pipe line unlawful, regardless of whether or not a permit was secured.

We believe it unnecessary to determine whether, in enacting the statute of 1928, the legislators intended to require that owners of already existing structures should obtain permits for the continued maintenance and use thereof, and we do not deem it necessary to settle the question of whether or not the existence of the structure for seventeen years raises a presumption that permission for its erection and for its continued existence had previously been obtained, because we have reached the conclusion that, even if either, or both, of the said statutes were violated in that no permit was obtained either from the "proper authority," as required by the first act, when the structure was erected, or from the board of state engineers, as required by the second statute, that failure had no causal connection with the accident—was not the proximate cause thereof—and therefore would not deprive plaintiff of its right to recover, if that right is otherwise shown to exist.

It is not every wrongful act of a plaintiff which constitutes such contributory negligence as will bar recovery. Only those acts without the occurrence of which the accident would not have taken place are, in the eyes of the law, to be taken into consideration. It may be true that it is negligence per se to violate a law, but, unless the violation results proximately in causing damage, no liability results merely because of the violation.

"* * * The modern rule is that, while the violation of a statute is negligence, yet to entitle the plaintiff seeking to recover damages for an injury sustained, he must show a causal connection between the injury received and the disregard of the statutory prohibition or mandate—that the injury was the proximate result." Ruling Case Law, vol. 22, sec. 91, p. 206, verbo Proximate Cause.

To operate an automobile without a driver's license is wrongful, and, technically, is negligence per se, but, if the evidence shows that the automobile was properly operated, liability does not result solely because of the technical violation. In many municipalities it is prohibited by ordinance for trains to block street crossings for more than a prescribed time, but, if train operatives violate such an ordinance and block a crossing longer than is permitted, an automobile driver who runs into the train will, nevertheless, be liable for the resulting damage.

In Michel Bros., Inc., v. Chas. Mallynn, 3 La. App. 69, it was held that there was no causal connection between the wrongful act of another driver in running into a parked car and the fact that the parked car had stopped on the wrong side of the road in violation of law. See, also, Roby v. Peter Graham, Inc., 3 La. App. 521.

In Bellocq v. De Soto Hotel Company, No. 8567 Orleans Appeal, unreported [see Louisiana and Southern Digest], we find a case in which a mechanic working on an automobile in a city street was struck by a window screen which fell from one of the windows of the De Soto Hotel. A city ordinance prohibited making repairs to automobiles in city streets. The court held that there was no causal connection between the violation of the ordinance and the ultimate damage. To the same effect see Central Glass Company v. Heiderich, 6 Orleans Appeal 336; Stout v. Lewis, 11 La. App. 503, 123 So. 346.

It cannot reasonably be argued that the "proper authority," whether it was the police jury or the board of engineers, would not have given the permit, had it been requested, because the continued existence of the structure for seventeen years, without protest and without other accident, is conclusive proof of the fact that the elevation was sufficiently great to meet all reasonable requirements. Thus the real fault lay, not in building and maintaining the structure, but solely in failing to secure a permit. There could have been no causal connection between the failure to obtain a permit, which, manifestly, would have been granted, if requested, and such an accident as is here described. The statutes in question, with the exception of the act of 1914, are not absolutely prohibitive, but are, rather, permissive. In other words, they do not provide that under no circumstances shall such a structure be erected, but merely that a permit therefor must be first obtained.

Nor do we feel that by the act of 1914 it was intended to absolutely prohibit such structures, if built sufficiently high above roadways as to permit all reasonably to be expected vehicles to pass, because, if its purpose was to prohibit all such structures, regardless of height, and regardless of whether permission of the proper authority had been obtained, then it is plainly irreconcilable with Revised Statutes, sec. 916, and with Act No. 185 of 1928, both of which permit such structures, provided a permit be obtained.

That mere failure to secure permission before undertaking to build structures prohibited except after obtaining a permit does not render the liability of the owner of the structure absolute is shown by a reading of the decision in Seibert v. McManus & Long, 104 La. 404, 29 So. 108. There a city ordinance prohibited the building of fires except in furnaces constructed in accordance with plans authorized by the city council. A furnace was constructed without the submission of the plans thereof to the council. A fire occurred, and it was sought to hold the owner liable because he had failed to obtain the required permission before erecting the furnace. The court held that it was not shown that there was causal connection between the failure to obtain the permit and the fire.

We experience no difficulty in reconciling with the views we have expressed the case of Anger et al. v. Al. G. Barnes Amusement Co., 183 Wis. 272, 197 N. W. 707, 708, on which counsel for exceptors place much reliance. There a large clock was erected on a sidewalk in Oshkosh, Wis. The dial "projected about one foot into the space above the street," and the pillar supporting the dial was only about six to eight feet high. The clock was struck and damaged by a wagon loaded with lumber, and the owners of the clock sought to recover the amount of the loss sustained. The court, in discussing the point now under consideration, said:

"There is a plain, causal connection between the position in which the dial of the clock was maintained over the public highway and the injury resulting to it by reason of defendant's use of the highway. * * *"

But we believe that there can be no doubt that, regardless of ordinance, it is negligence to maintain an obstruction only six or eight feet above a street, particularly when the obstruction is so erected that the fact that it extends into the space over the street may not be readily noticeable. Many vehicles are six to eight feet high. Few are as high as twelve and one-half feet. We can readily conceive that a permit to erect an obstruction only six or eight feet high above a city street would have been refused, but we find it difficult to believe that any objection would have been found to the placing of one twelve and one-half feet over a country road. The clock, only six or eight feet above the street, was an obstruction which was dangerous per se, regardless of whether a permit for its erection had been obtained, whereas the obstruction with which we are now concerned was not malum in se, but merely unlawful because not affirmatively permitted. The petition, then, does not on its face show such contributory negligence as would bar recovery, and therefore a cause of action is stated against the drayage company.

In the original petition, the right to maintain the suit directly against the insurance company, which, it was asserted, had issued a liability policy to the drayage company, was alleged to result from the operation of Act No. 55 of 1930, which statute is an amendment of Act No. 253 of 1918. The act of 1930, inter alia, provides that:

"* * * That, after the passage of this act, it shall be illegal for any company to issue any policy against liability unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and any judgment which may be rendered against the assured, for which the insurer is liable, which shall have become executory, shall be deemed prima facie evidence of the insolvency of the assured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer company. Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought either against the insurer company alone or against both the assured and the insurer company, jointly and in solido. * * *"

In the supplemental petition, the further allegation is made that, after the accident, the representatives of the insurance company admitted liability on behalf of their company and authorized the making of the repairs, and it is now argued that the suit against the insurance company may be maintained both because of the statute giving the direct right of action and because of the agreement referred to as having been made by the representatives of the insurance company. The insurance company denies that the right to a direct action exists, and argues:

(1) That the statute of 1930 is unconstitutional, in that it violates section 16 of article 3 of the Louisiana Constitution of 1921, which reads as follows:

"Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object."

(2) That the act of 1930 can have no retroactive effect, and that, since there is no allegation to show that the policy was issued after the promulgation of the act, it follows that the petition fails to show that the act is to be taken into consideration, and that, if the act be not applicable, there is no right to a direct action.

(3) That, if the act be given retroactive effect and be interpreted as writing into all policies in force at the time of its promulgation the provisions permitting a direct action, then the act is violative of article 1, sec. 10, of the Federal Constitution, in that it impairs the obligation of the contract made by the insurance company.

(4) As to the allegations of the second petition to the effect that the representatives of the insurance company admitted liability and authorized the making of the repairs, counsel for the insurance company contend that such admission and authorization cannot be proven because they would constitute verbal promises to pay the debts of another (to-wit, the drayage company), oral evidence of such promise being inadmissible under Civil Code, article 2278, reading as follows:

"*Parol Evidence Shall Not Be Received*:
\* \* \*

"3. To prove any promise to pay the debt of a third person. \* \* \*""

(5) That the second statute is unconstitutional, in that the special purpose—to give direct action even if there is no insolvency—is not germane to the purpose of the original act (Act No. 253 of 1918).

Of course, if the statute is constitutional, and if it is applicable to the facts alleged, then the debt which the representatives of the insurance company are alleged to have agreed to pay was its own debt, and proof of its promise to pay its own debt may be made by parol. Let us, then, first determine whether the view of counsel that the act is unconstitutional may be accepted by us.

We will consider the various contentions listed above in irregular order, first devoting ourselves to those numbered (2) and (3), because we feel that these should be considered together.

Not all retroactive statutes are unconstitutional. There is no inhibition against the enactment of a law which applies retrospectively, or to which retrospective effect may be given, provided only that, in giving to such law retrospective effect, the obligation of a contract be not thereby impaired, or vested rights be not thereby interfered with. In a syllabus written by the court in Fontenot v. Young, 128 La. 20, 54 So. 408, 409, the Supreme Court of Louisiana said:

"Retroactive laws may be passed, so long as they do not impair the obligations of contracts or devest vested rights; and, where such a law is passed by competent authority, and the intention that it shall operate retroactively is clearly expressed, it becomes the duty of the courts to construe and apply it according to such intention."

Matters affecting merely the remedy or the method of procedure have many times been the subject of retrospective legislation, and, with great unanimity, the courts have held that such legislation is not violative of the article of the Federal Constitution which we are now considering, and that such legislation does not impair the obligation of contracts. Monteleone v. Seaboard F. & M. Ins. Co., 7 Orleans App. 247, affirmed on writ of certiorari granted by the Supreme Court, 126 La. 807, 52 So. 1032; Sturges v. Crowninshield, 4 Wheat.

200, 4 L. Ed. 529; Fithian v. Centanni, 159 La. 831, 106 So. 321. Likewise is it found that:

"The rule that the terms of a statute or constitution are not to be interpreted as having a retrospective or retroactive operation, unless the language used plainly conveys that intention and is susceptible of no other interpretation, finds no application to remedial statutes · or to the remedial provisions of organic laws. Remedial laws are an exception to the general rule, and may have retroactive or retrospective force." Cassard v. Tracy (Cassard v. Zacharie), 52 La. Ann. 835, 855, 27 So. 368, 377, 49 L. R. A. 272.

Here we feel that no substantial right of the insurer would be interfered with by giving to the act of 1930 retrospective effect to such extent as to hold that, into all policies in force at the time of its enactment, there was by the said statute written the terms thereof.

By the earlier act of 1918, in case of insolvency of the insured, the injured party was given the right to a direct action against the insurer, so that already, by the 1918 act, the insured was deprived of the right to shield itself behind an insolvent principal. As the situation stood at the time of the adoption of the act of 1930, an insurer had no technical defense left, and its obligation was contingent upon one thing only, the liability of the principal. It is and was of no substantial importance to an insurer that a suit must first be brought against its principal. It has and had no vested interest in the right to be sued only by its principal. Its obligation to pay in the event of damage caused by its principal cannot be said to be impaired by the fact that payment may be demanded directly by the injured party, instead of indirectly through the insured. We feel that to give retrospective effect to the statute of 1930 would not have the effect of impairing the obligation of the insurance agreement, and we therefore hold that it is immaterial that in the petitions it is not made to appear that the policy in question was issued after the enactment of the statute of 1930. Whether written before or after that statute was passed, it is affected by it.

Our conviction in this regard is strengthened by a reading of the decision rendered in Monteleone v. Seaboard F. & M. Ins. Co., supra, in which case it was sought to make applicable to insurance policies already in existence the provisions of Act No. 168 of 1908. Under that statute, inter alia, it was required that insurance companies should settle losses within sixty days from receipt of proofs of loss, and it was further provided that:

"* * * Should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, 12 per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such· loss. * * *" Section 3.

It was contended that that provision of the statute could not apply to policies already in existence, as to permit such application would impair the obligation of the existing contract, but the court said:

"The right of the Legislature to enact statutes of this character may not be disputed; if they are remedial and effect the enforcement only and not the substance of the contract, they constitute a valid exercise of legislative authority and are a declaration of the public policy of the State."

After reviewing the matter on writ of certiorari, the Supreme Court said (126 La. 814, 52 So. 1032, 1035):

"Defendant urges that the provisions of Act No. 168 apply only to policies of insurance which issued subsequently to the going into effect of the act; that is, to policies which issued after July, 1908.

"We see no good reason for this contention. Insurance companies which had issued policies prior to July and the holders of such policies were notified by that act as to what would be required from that date forward in respect to the policies in which they were respectively interested."

That reasoning is applicable here. By the act of 1930 insurance companies and holders of policies were notified that thereafter injured persons might bring direct actions against the insurers of the parties alleged to be responsible. No substantive or vested rights were thereby taken from the insurers. Their liability remained contingent and dependent upon some proof of fault as was required before the passage of the act.

Nor can exceptor derive comfort from the objections, which we will also discuss together, numbered (1) and (5) to the effect that the statute violates the Constitution of Louisiana, in that it has more than one object, and in that its object is not expressed in the title, and in that the amending act of 1928 is not germane to the original act of 1918.

We feel that the purpose of both statutes was to guarantee to an injured party his right to recover from the insurer of a person liable to him. There was only one object in both statutes. This object is clearly expressed in both statutes, and in the latter the title is amended and re-enacted.

"This court has * * * held that the title of an act which states the object to be to amend and re-enact a section of the Revised Statutes, only the number of which is given, expresses its object within constitutional requirements"—citing numerous authorities. State v. Land, 131 La. 611, 613, 59 So. 1007, 1008.

"We have ourselves recently held, in the case of Allopathic State Board of Medical Examiners v. Fowler, 50 La. Ann. 1358, 24 So. 809, that it is a sufficient compliance with the constitutional requirement of the title, if the title indicates the general purposes of the law, without specifying in detail each particular provision of the law." Compagnie Francaise, etc., v. Board of Health, 51 La. Ann. 657, 25 So. 591, 596, 56 L. R. A. 795, 72 Am. St. Rep. 458.

But exceptors say that the subject-matter of the second statute is not germane to that contained in the first, and therefore it was improper to attempt to amend by legislation on an unrelated subject.

We feel that the subject-matter of the two acts is sufficiently related to permit amendment of one by the other. Both, as we have said, have for their object the protection of the right of an injured party to recover from the insurer of the party at fault.

Objection 4, to the effect that the alleged promise to pay was not in writing, and that, therefore, no oral evidence thereof may be introduced, is without force, in view of the fact that we have held the act of 1930 to be entirely constitutional and applicable, for, by that statute, the debt which originally may have been the debt of a third party has been made the debt of the insurer, and oral proof of promises to pay may be availed of.

For these reasons, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, that the exceptions be, and they hereby are, overruled, and that the matter be remanded to the district court for further proceedings according to law and not inconsistent with the views herein expressed.