## RAMBIN et ux. v. SOUTHERN SALES CO., Inc., et al.*

### No. 4430.

Court of Appeal of Louisiana. Second Circuit.
Dec. 16, 1932.

Thatcher, Browne, Porteous & Myers and Chandler & Chandler, all of Shreveport, for appellants.

Harry V. Booth, of Shreveport, for appellees.

McGREGOR, J.

On November 10, 1931, Ernest and Mary Rambin, husband and wife, residents of the city of Shreveport, plaintiffs herein, were making an automobile journey from their home to Crichton, La., a town in Red river parish on United States paved highway No. 71. Just before they reached the village of Elmgrove on·said highway, at about 6:30 o'clock in the evening, Ernest Rambin, who was driving a model "T" Ford automobile with his wife sitting by his side, observed a

---

*Rehearing denied January 19, 1933.

wagon drawn by two mules meeting him and traveling in a northerly direction on the east side of the highway. Attached to and drawn by this wagon there was another wagon of the same kind, so that the mules were really pulling two wagons along the highway.

In addition to the two wagons, Rambin saw an automobile traveling in the same direction and rapidly approaching from the rear. Very soon it became apparent to the plaintiffs that the driver of this on-coming car would attempt to overtake and pass the wagons. Realizing the danger of such a movement, Rambin pulled his car just as far to the right side of the road as he could so that the left wheels of his car lacked only a few inches of being off the pavement.

In spite of this precaution on the part of the plaintiff Ernest Rambin, the on-coming car, in attempting to overtake and pass the two wagons, failed in the attempt and collided head-on with the plaintiffs' car. When Rambin pulled to the extreme right of the road, he did so in order to afford as wide a passage as possible between the car and the wagons in the hope and expectation that the driver of the other car would negotiate the passage and resume his position in front of the wagons on the right or east side of the highway.

When the two cars collided they were both demolished. Ernest and Mary Rambin were seriously injured and the driver of the other car was killed instantly. Subsequently, investigation disclosed that the driver of the other car was James D. Harper; that he was driving a car owned by the Southern Sales Company, Inc., by whom he was also employed; and that at the time of the accident he was on business for his employer, and that he was performing service incident to, and in the scope of, his employment.

The two plaintiffs were removed to a sanitarium in the city of Shreveport as soon as possible, where they received treatment for several weeks.

The Southern Sales Company, Inc., carried liability insurance on the car that was driven by Harper in the Associated Indemnity Corporation of San Francisco, Cal. The insurance was written by the Mayfield-Jones Insurance Agency, Inc., local agent in the city of Shreveport, through Ledbetter & Page, Inc., general agent in New Orleans.

Subsequent to the date of the accident, James S. McConathy was appointed as receiver for the Southern Sales Company, Inc., on February 13, 1932, by the first district court of Caddo parish.

On March 24, 1932, the plaintiffs, Ernest and Mary Rambin, filed this suit against the Southern Sales Company, Inc., through James S. McConathy, receiver, and the Associated Indemnity Corporation, who was cited by service on Alice Lee Grosjean, Secretary of State.

In their petition plaintiffs allege that they were seriously injured and damaged in the said accident, and that the accident was solely and exclusively the result of the gross and wanton negligence and carelessness of James D. Harper, the driver of the automobile owned by the defendant Southern Sales Company, Inc., and insured by the defendant Associated Indemnity Corporation.

Ernest Rambin, the husband, sued for damages in the sum of $8,855, which he itemizes as follows:

| | |
|---|---|
| Loss of salary and wages, both past and future | $1,500.00 |
| Pain and suffering | 2,000.00 |
| Sanitarium account for services rendered Mary Rambin and himself; physician and surgeon's fees for services rendered Mary Rambin and himself, both past and necessary to be rendered in the future by reason of said accident, as well as medicine purchased as a result of said accident | 1,200.00 |
| Permanent injury to left leg; scars on right hand and left leg, and general impairment of health by reason of said accident | 4,000.00 |
| Loss of automobile | 75.00 |
| Nursing services required for Mrs. Mary Rambin (twenty nights) | 80.00 |
| | $8,855.00 |

And Mary Rambin, the wife, asks for $11,000, which she itemizes as follows:

| | |
|---|---|
| Pain and suffering | $ 3,000.00 |
| Permanent injuries to lumbar region of back (bilateral sacroiliac sprain); injuries to kidneys, bladder, and general and permanent impairment of her health | 8,000.00 |
| | $11,000.00 |

On April 19, 1932, the defendant the Associated Indemnity Corporation filed an exception of no cause or right of action, which was overruled on May 7, 1932. This exception was based upon the contention that Act No. 55 of 1930, in amending Act No. 253 of 1918, does not confer the right on an injured third party to bring a direct action against the insurer without first alleging and proving insolvency.

After this exception had been overruled, the two defendants filed their answers on May 13, 1932, the attorney for the insurance company appearing and representing both defendants.

The answer of the Southern Sales Company, Inc., denies all negligence on the part of Harper, the driver of its automobile, as well as all the allegations relative to the injuries of the plaintiffs and their extent. It is spe-

cially alleged that the accident was due to the negligence of the plantiffs in having lights on their car that were burning so brightly that they dazzled and confused the said Harper and rendered it impossible for him to avoid the collision.

The answer of the defendant Associated Indemnity Corporation was similar to that of the Southern Sales Company, Inc., but went further. It is specially denied that it ever issued to the Southern Sales Company, Inc., a policy of insurance containing a provision by which it agreed to become solidarily bound with it for claims arising from injuries sustained in accidents or collisions in connection with the operation of the car described in plaintiffs' petition. This defense is practically the same as was urged in support of its exception of no cause or right of action.

On May 26, 1932, the Associated Indemnity Corporation filed an amended and supplemental answer wherein it denied the authority of the local agent, Mayfield-Jones Insurance Agency, Inc., to issue and deliver the policy sued on, claiming that the authority of this agency had been revoked.

On that same date, May 26, 1932, Chandler & Chandler, attorneys, appeared as separate and additional counsel for the Southern Sales Company, Inc., and on June 2, 1932, these attorneys filed another appearance for the Southern Sales Company, Inc., which, in effect, is a plea of estoppel against the supplemental answer of the Associated Indemnity Corporation, in which it set up the want of authority in Mayfield-Jones Insurance Agency, Inc., to issue and deliver the policy of insurance on the truck which plaintiffs allege caused the accident.

On the issues as thus made up, a trial was had. At this trial there was judgment against the Southern Sales Company, Inc., in favor of Ernest and Mary Rambin in the sums of $5,780 and $3,000, respectively. No reference is made to the other defendant Associated Indemnity Corporation either in the minute record of the judgment or in the judgment itself. Hence, it is evident that the exception of no cause or right of action which had been previously overruled was sustained by the court at the end of the trial. While the judgment, according to the minutes, was rendered against the Southern Sales Company, Inc., when it was reduced to writing and signed in open court, it read against James S. McConathy, receiver of Southern Sales Company, Inc.

The plaintiffs have appealed from that portion of the judgment that rejects their demands against the Associated Indemnity Corporation. James S. McConathy, receiver of Southern Sales Company, Inc., has appealed and asks that the judgment be amended so as to run against the company instead of against him as receiver, and the plaintiffs have answered this appeal and ask that the judgment be increased to $7,786 and $5,000, respectively.

## On the Exception of No Cause or Right of Action.

It is contended by the defendant Associated Indemnity Corporation that the plaintiffs have no right to join it in this suit without first alleging and then proving the insolvency of the insured, Southern Sales Company, Inc. The right to bring the suit as it was brought rests solely on Act No. 55 of 1930, § 2 of which reads as follows:

"That Section 1 of Act 253 of 1918 be amended and re-enacted so as to read as follows:

"Section 1. That, after the passage of this act, it shall be illegal for any company to issue any policy against liability unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and any judgment which may be rendered against the assured, for which the insurer is liable, which shall have become executory, shall be deemed prima facie evidence of the insolvency of the assured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer company. Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought *either* against the *insurer company alone* or against *both the assured* and the *insurer company, jointly and in solido.*" (Italics ours.)

This act is as plain as words can make it. As will be seen, it provides (1) that an action may be maintained against the insurer by an injured person or his heirs after judgment has been obtained against the insured, and (2) that a direct action may be maintained in the *first instance either* against the *insurer company alone*, or against both the insured and the insurer jointly and in solido. The validity of this act has been sustained at least three times since its passage, by three different judges in three different courts.

Rossville Commercial Alcohol Corporation v. Dennis Sheen Transfer Co., Inc., et al., 18 La. App. 725, 138 So. 183, 188. This case was decided by the Orleans Court of Appeal, and writs of certiorari and review were refused by the Supreme Court on February 29, 1932. In that case it was urged by the insurer company that the provision of Act No. 55 of 1930, relied on by the plaintiffs herein, is uncon-

stitutional, and the attack was based on the contention that the act is broader than its title. In overruling this plea of unconstitutionality, the court said:

"We feel that the purpose of both statutes was to guarantee to an injured party his right to recover from the insurer of a person liable to him. There was only one object in both statutes. This object is clearly expressed in both statutes, and in the latter the title is amended and re-enacted.

"'This court has * * * held that the title of an act which states the object to be to amend and re-enact a section of the Revised Statutes, only the number of which is given, expresses its object within constitutional requirements'—citing numerous authorities. State v. Land, 131 La. 611, 613, 59 So. 1007, 1008.

"'We have ourselves recently held, in the case of Allopathic State Board of Medical Examiners v. Fowler, 50 La. Ann. 1358, 24 So. 809, that it is a sufficient compliance with the constitutional requirement of the title, if the title indicates the general purposes of the law, without specifying in detail each particular provision of the law.' Compagnie Francaise, etc., v. Board of Health, 51 La. Ann. 657, 25 So. 591, 596, 56 L. R. A. 795, 72 Am. St. Rep. 458.

"But exceptors say that the subject-matter of the second statute is not germane to that contained in the first, and therefore it was improper to attempt to amend by legislation on an unrelated subject.

"We feel that the subject-matter of the two acts is sufficiently related to permit amendment of one by the other. Both, as we have said, have for their object the protection of the right of an injured party to recover from the insurer of the party at fault."

Hudson v. Georgia Casualty Co. et al. (D. C.) 57 F.(2d) 757, 759. This is a case decided by a former member of our Supreme Court, and his interpretation of the act in question carries with it great force. It may be said that his remarks are obiter and that they are not pertinent to the issues involved in the case now under consideration. Even though the case may not have involved the direct question that we are dealing with, still that court's statement of its appreciation of the purpose of the act in dispute is powerfully persuasive, however it may have been uttered. In referring to this act, that court said: "The contract of insurance was made in this state and established a contractual relation between the insured and the insurer, from which certain statutory rights flowed in favor of third persons who might be injured, *the first (Act No. 253 of 1918) giving to them the privilege of suing the insurer in the event of the bankruptcy of the insured*, and, the *second (Act No. 55 of 1930), permitting the bringing of the action direct* against the former in the *first instance*." (Italics ours.)

In the case of Gager v. Teche Transfer Co. et al., 143 So. 62, the Court of Appeal of the first circuit was called upon to decide the identical issue that was raised and decided in the Orleans Court of Appeal in the case of Rossville Com'l Alcohol Corp. v. Sheen Transfer Co., referred to above, and reached the same conclusion by approving the opinion handed down by that court.

In their brief counsel for the defendant Associated Indemnity Corporation appear to agree that Act No. 55 of 1930, as written, does undertake to grant the right of action against the insurer as contended for by the plaintiffs, for in discussing that act in connection with the former act, Act No. 253 of 1918, they say:

"It will be noted also that the action thus given to the injured third person against the insurer, in the event of the insolvency, or bankruptcy, of the insured, was maintainable only under '*the terms and limits of the policy*,' which proviso allowed the insurance companies to require, under 'the terms and limits of the policy,' that judgment must first be obtained against the insured, and his insolvency, or bankruptcy, made to appear by proper proof.

"It was because of the situation thus existing that Act 55 of 1930 was passed, and, in this Act, the injured third person,—already having, under the terms of the previous legislation, a right of action against the insurer, —was granted a direct right of action in the sense of dispensing with prior suit and judgment against the owner, as a prerequisite to the action against the insurer, and providing that such injured person should have, at his option, 'a right of direct action against the insurer company, within the terms and limits of the policy * * *, either against the insurer company alone, or against both the insured and the insurer company jointly and in solido.'"

But counsel contend that the only object of the two acts is to require that all insurance policies shall contain a clause to the effect that the insolvency or bankruptcy of the insured should not release the company from the payment of damages for injuries sustained within the provisions of the policies, and that, therefore, the clause in Act No. 55 of 1930 adds nothing to the rights of the injured party. In other words, this defendant contends that that added clause, which purports to give the right of direct action against the insurer company, is meaningless, even though it purports to grant the right.

Counsel for defendant urges that the two cases cited above, one from Orleans Court of Appeal, and one from the First Circuit, are not decisive of the issues in this case for the reason that in both those cases the insurer companies admit that the act means what it says, but contend that it is unconstitutional, whereas in this case it is the contention of

the insurer that the provision' purporting to grant the direct right of action against the insurer in the first instance is meaningless and ineffective and is, therefore, so much surplusage.

But the direct right of action is plainly granted by the simple wording of the act. The validity and constitutionality of the act have been sustained by two courts. It is the uniform custom and policy of the courts to give force and effect to every provision of an act where it is possible to do so. In this case our duty is plain. The Legislature clearly intended to grant and protect the right of an injured party to recover from the insurer of the party at fault.

But counsel contend that whatever direct right of action may have been given by the act, this right must be exercised "within the terms and limits of the policy," and that, since the policy, in so many words, provides for the protection of the injured third party only in the event of the insolvency, or bankruptcy, of the insured, this right of direct action can be exercised only in such case. That position is not well taken. The expression "within the terms and limits of the policy," has reference to the amount of the policy, the character of the risk, and the time in which suit may be brought, and such like provisions. The insurer cannot insert "terms and limits" in a policy that would contravene the right of the injured party to bring a direct action, as provided by the act.

Defendant urges that to give the injured party the right of direct action against the insurer is to confer on him a greater right than he has already, and a greater right than the insured has. That point is not well taken. It is admitted by all that in cases where the insured is insolvent, the injured party has a direct right of action against the insurer. In case the insured is solvent, the injured party can sue him direct and collect without reference to the insurer or at his option he may sue the insurer direct without reference to the insured. The remedy in each case is absolutely equal in so far as the result is concerned, and neither is superior to or greater than the other.

Besides, what advantage is it to the insurer to force the injured party to sue the insured first, and then bring a formal suit against it in which the original facts as to the fault or negligence of the insured cannot be re-examined? Under all policies such as the one involved in this case, the insurer has not only the right and privilege, but the obligation of providing and taking care of the defense in any suit brought against the insured for which it might be liable, and, in any subsequent suit against the insurer by the insured, he has to establish only the fact of the judgment and its binding force on him. In the Rossville v. Sheen Case, cited above, the court very ably and aptly said: "It is and was of no substantial importance to an insurer that a suit must first be brought against its principal. It has and had no vested interest in the right to be sued only by its principal. Its obligation to pay in the event of damage caused by its principal cannot be said to be impaired by the fact that payment may be demanded directly by the injured party, instead of indirectly through the insured."

The exception of no cause or right of action was properly overruled in the first instance and should not have been sustained at the end of the trial, and, if judgment were rendered against the Southern Sales Company, Inc., a similar judgment should have been rendered against the Associated Indemnity Corporation.

## On the Merits.

It is admitted that at the trial of the case it was conclusively proved that the accident was due solely to the negligence of the deceased, James D. Harper, driver of the automobile belonging to the Southern Sales Company, Inc., and that at the time of the accident, he, Harper, was performing duties in the course of his employment. It is unnecessary, therefore, to discuss any of the evidence that relates to the cause of the accident.

It is evident from the pleadings, and the record as a whole, that the judgment should have been against the Southern Sales Company, Inc., and not against the receiver. This is an error which we have a right to correct on appeal, and we shall do so.

In its supplemental and amended answer the defendant Associated Indemnity Corporation alleged that the authority of Mayfield-Jones Insurance Agency, Inc., to write insurance in its name had been revoked. At the trial it was conclusively proved that this agency's authority had not been revoked, and that, therefore, it had ample authority. This question is not urged seriously in the argument of the defendant.

## Quantum of Damages.

Plaintiff Ernest Rambin worked for the K. C. S. Railway Company in the position of car man, in which work he was engaged in building cars. He appears to have been earning about $150 per month. Mrs. Rambin did all her housework, did the washing of some other families, took care of some children, and did church work. Both plaintiffs appear to have been in good physical condition prior to the injuries. Perhaps we may best state the injury each plaintiff received by examining the testimony of their physicians who treated them, as well as the testimony of the doctors who made the X-ray pictures.

Drs. George and Harold Quinn, brothers, were the physicians who administered medical treatment to plaintiffs during the time it was necessary for them to receive such treatment.

Both plaintiffs after the accident were carried to the Schumpert Sanitarium, where they remained for some time and where Drs. Quinn treated them. This evidence shows that plaintiff Ernest Rambin suffered a multiple comminuted fracture of the left leg, which extended into the joint, that is, the upper end of the tibia, the large bone of his leg, which was immobilized. Also this testimony shows that the injured limb was not put in splints for some time on account of swelling which the doctors had to first reduce. After the swelling was sufficiently reduced, the injured limb was put in a plaster cast and remained there about five weeks. In describing his injuries, Dr. George Quinn stated in effect that, when he first reached the plaintiff, he was suffering excruciating pain; that he was a bundle of bruises all over his body; that he had brush burns over his body; that it was necessary for him to administer morphine to relieve his pain and that he applied antiseptics to keep down infection, and then proceeded to apply treatments to reduce the swelling around the knee, which had at that time already started; that for some time after he began the treatment he gave plaintiff aspirin, codeine, or morphine, depending upon the degree of suffering, to relieve his suffering. He said that because this injury was in the joint of the knee he considered it more serious than an ordinary fracture. He testified also that there is bound to be some impairment of his health; that, assuming Mr. Rambin to be a car knocker for a railroad, in view of the condition of his leg, he does not think he will be able to carry on such duties. In answer to a question as to whether or not Mr. Rambin will ultimately recover sufficiently to do the same kind of work he was engaged in at the time of his injury, Dr. Quinn said that he probably would in time, but that he would not undertake to say how long because he has, at the present, a cup-like formation upon the articular surface of the bones where they rub together, at which the bones have not grown back together as they should, and that, hence, he does not get full motion, that is, full use of his leg, and further, that he complains of pain and that he imagines he will suffer some discomfort for a long period of time. While Dr. Harold Quinn did not actually testify, yet it was admitted that his testimony would be the same as his brother, Dr. George Quinn, and it was accepted as though he had actually been examined.

Dr. Harold G. F. Edwards, the roentgenologist who made the X-ray of Ernest Rambin's injuries, testified that on June 1, 1932, he made an X-ray picture of his injuries, at which time he found "that the upper part of the large bone of the leg, the tibia, shows some irregularity of the external tuberosity of the tibia, which appears to be depressed at the articular surface, a sort of cupping of the bone,—otherwise no bone or joint change is noted." He was then asked: "Q. Would that

be a disabling condition, assuming the person had to use that knee in work, in hard manual labor? A. I think it would."

On cross-examination he was asked: "Q. The cracks in the bone there are not as serious as where there is entire breaking of the bone? A. The seriousness is due to the fact that the fracture runs into the joint, and I don't think it would make any difference what type it is, the point is whether it runs into and disturbs the joint function."

Dr. Frank H. Walke testified in effect that he heard the testimony of Dr. George Quinn concerning Ernest Rambin and that his testimony is practically the same. He said: " * * * This fracture was a lineal fracture and went into the joint itself, and the condyle in the joint was broken and has been replaced with scar tissue and any sudden twisting or misstep or something of that kind will probably cause him to have some pain and trouble in the future, and as far as the injury is concerned, why, that probably will heal within a year, but he will be troubled indefinitely by the breaking of the condyle."

He further states that the injury will cause him pain in bad weather or when he makes a misstep or any sudden twisting takes place, and that the limb is likely to swell and hemorrhage and bleed.

The evidence shows that Dr. Walke was called in consultation to examine Mr. Rambin, in other words, he knows first-hand the condition of Rambin, as a consulting physician.

Dr. T. J. Fleming, representing the insurance company, says he examined Mr. Rambin several times. He says that Mr. Rambin has some stiffening of the tendons and ligaments and has not full motion of the left knee. He said that he thinks in another six months after the trial, that is, twelve months after the date of the injuries, he will have recovered sufficiently to use his knee to do the work he had been doing before the accident. When asked as to the pain Rambin would sustain as a result of his injuries after six or eight more months had passed, he said: "I don't think there would be any pain to amount to anything; I don't think the pain would be a consideration at all."

■ On the question of Mrs. Rambin's injuries, Dr. George Quinn says that when he first saw her in the sanitarium she was on a stretcher and in intense pain; that she had bruises, contusions, and soreness generalized over her body; that she had two teeth knocked out; that she had a large bruised spot over the side of her chest; that she had a split in her left hand between her index and her middle fingers, extending down to the palm of her hand, about one, or one and one-third inches in length; that most of her pain appeared to be from her back injury and

in the upper part of her back and chest. He was asked: "What diagnosis would you make of her condition?

He answered: "Sacro-iliac sprain and generalized bruises, lacerated wound on her left hand, and also a fracture or breaking out of a couple of teeth she had there."

He also said that she had a cut on the ear which he thought was the right ear. He said that after she was taken to the sanitarium she developed hypostatic pneumonia, but "that was not caused by the accident, but one of the complications of her recovery period. * * *"

"Q. What is her condition at the present time with reference to this back condition and the other condition mentioned? A. She has to lie down in bed, if she sits up in it over fifteen minutes, she complains of being nervous and also it causing a lot of pain in her back to sit up or stay in one position.

"Q. Have you examined her back recently? A. Yes.

"Q. Is this pain in the back still in the same place? A. Yes.

"Q. Now, the complaints she makes to you, Doctor, would you say they are reasonable, considering the actual findings you made and the objective symptoms,—are the complaints she makes now reasonable? A. They are absolutely reasonable."

As stated before, in discussing the injuries of Ernest Rambin, it was admitted that Dr. Harold Quinn would give the same testimony as given by Dr. George Quinn. Dr. Walke did not examine Mrs. Rambin. Dr. J. N. Gorton, being placed on the stand by the defendants, testified that he examined Mrs. Rambin on June 1st, at which time he found that she seemed to have some trouble in the lower spine in the sacro-iliac joint; that "she had some inability in getting up off the bed and could not stay up long at the time, and was unable to walk without some aid." He stated that, from the history of her case which she gave him, it seems that she had made considerable improvement and that he would say after six or eight months more she should get up and get about without assistance.

"Q. From your examination, would you say she would be able to do her usual household duties in six to eight months? A. Probably so."

From this medical testimony, it is evident that Mr. Rambin has a very questionable case as to his ultimate full recovery. As to Mrs. Rambin, at the time of the trial, which was fully seven months after her injuries, she was still confined to her bed and only able to sit up a few minutes at a time at intervals. It is estimated, however, by Dr. Gorton that after about six or eight months more she would, or should, be recovered. However, as his testimony shows, he merely expressed it as "probable" that she would be able to do her usual household duties after six or eight months more. All the testimony shows that both plaintiffs suffered and are still suffering considerable physical pain, and which conditions are likely to continue for some time to come, more especially in the case of Mr. Rambin.

The awards made by the district court covered the value of plaintiff's car that was destroyed by the accident, as well as all sanitarium, doctors', nurse's, and drug store bills, as well as other expenses incurred in connection with their injuries and illness. The district judge thought an award of $5,780 to plaintiff Ernest Rambin and $3,000 to plaintiff Mrs. Mary Rambin reasonable. We are not in a position to differ with him on this point.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is, hereby annulled, reversed and set aside in so far as it sustains the exception of no cause or right of action and refuses judgment against the defendant the Associated Indemnity Corporation; and it is amended by substituting the name of Southern Sales Company, Inc., for that of J. S. McConathy, receiver; and, as thus amended, it is now ordered that there be judgment herein in favor of Ernest Rambin for the sum of $5,780 against the defendants Southern Sales Company, Inc., and Associated Indemnity Corporation in solido, with legal interest from judicial demand, and in favor of Mary Rambin for the sum of $3,000 against the defendants Southern Sales Company, Inc., and Associated Indemnity Corporation in solido, with legal interest from judicial demand; with the costs of both courts to be paid by the defendants.

PALMER, J., dissents from ruling on exception of no cause of action.