780

Harry V. Booth, of Shreveport, for appellant.

Hugh M. Wilkinson, A. Miles Coe, and Fred W. Oser, all of New Orleans, for appellee.

## HOLLAND v. OWNERS' AUTOMOBILE INS. CO. OF NEW ORLEANS.
### No. 4817.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1934.

TALIAFERRO, Judge.

The Plymouth car, operated by the Economy Cab Company of Shreveport as a taxicab, in which Leon Holland, son of plaintiff, was a passenger, while traveling at a rapid rate of speed westerly on Milam street, ran into a Ford car, loaded with negro musicians, at about 3 o'clock a. m., July 2, 1932, in the intersection of Milam and Christian streets in the city of Shreveport. The Ford car was going southerly on Christian street at a speed about one-half as fast as that of the taxicab. The Ford was struck on its rear left side and was knocked diagonally across Milam street, some 25 feet. Both cars were badly damaged. Bert Benton, one of the negro musicians, was injured and his instrument damaged. The nose of Clyde La Fitte, operator of the Plymouth car, was mashed against the steering wheel, but not broken.

Plaintiff contends that her son received injuries by being thrown violently against some

part of the car, in which he was traveling as a passenger, which ultimately caused his death on November 23d, following the collision. She contends, and in her petition alleges, that the collision was caused by the negligence of the operator of the Plymouth car in several respects, namely, that he was traveling at an excessive and imprudent rate of speed, did not have his car under control, did not slow down as he approached the intersection, and entered it after the Ford car had the right of pre-emption thereof.

On October 18th, plaintiff instituted this suit against defendant, Owners' Automobile Insurance Company of New Orleans, who wrote the public liability insurance carried by the Economy Cab Company which, it appears, is now insolvent. She originally sought to recover an amount for herself for medical, physician's, and sanitarium expense bills incurred during her son's illness, and for loss of time by him from work, and an amount for the son for the pain and suffering endured by him because of his injuries. After the son's death she amended her petition by alleging that, and other facts, and sued in her own right for damages on account of his death.

Defendant denies liability of any kind to plaintiff, and denies that the collision was due to the negligence of the operator of the taxi, denies that Leon Holland was injured by the collision, and that, if injured at all, such injuries did not cause or contribute to his death. The constitutionality of Acts No. 253 of 1918 and No. 55 of 1930 is attacked.

The demands of plaintiff in the lower court were rejected and her suit dismissed. She appealed.

▪ As to the right of plaintiff to bring a direct action against defendant on the contract of insurance between it and the Economy Cab Company, before suing the insured, regardless of stipulations therein to the contrary, there should now be no uncertainty. The question has been passed on affirmatively by this court and the First circuit. The Supreme Court has approved this ruling. Rambin v. Southern Sales Co. (La. App.) 145 So. 46; Gager v. Teche Transfer Co. (La. App.) 143 So. 62; Rossville Comm. Alcohol Corporation v. Dennis Sheen Transfer Co., 18 La. App. 725, 138 So. 183.

In some or all of these cases the Supreme Court declined applications for review.

▪ The record clearly establishes negligence on the part of Clyde La Fitte, driver of the Plymouth car, as he approached the intersection of Milam and Christian streets. There is a cemetery in the northeast angle between these streets, the walls of which are so high on the north side of Milam and east side of Christian that automobiles on the one street may not be seen from automobiles on the other. There is a traffic signal light over the intersection, but it was not operating when the collision occurred. La Fitte admits he was traveling at the rate of 40 miles an hour as he approached this blind crossing, and that he did not slow his car down to any extent. He could not have seen the other car in time to stop his own before the impact, at the rate he was moving. The Ford was traveling at a speed not in excess of 20 miles per hour, slowed down before reaching the intersection, and was in it—having the right of pre-emption—when rammed by the Plymouth. The effect of the impact on the Ford reflects the speed at which the Plymouth was moving at the time.

An autopsy revealed that young Holland died of abscess of the brain and septicaemia. The abscess was located against the skull, above the right eye. Plaintiff alleges that in being thrown violently from the seat of the car, her son was bruised and cut about the head, hands, and face, and also suffered internal injuries; that the right frontal portion of his head, the bones and tissues thereof, were injured, causing infection to develop in the head, nose, and sinuses, producing a swelling over the right eye.

▪ When the two cars rested after the collision, the occupants of each got out and surveyed the situation generally, taking into account the nature and extent of the injuries to persons and cars. All witnesses who gave testimony on the exact point say that young Holland left the taxi when the driver, La Fitte, and H. B. Jackson, who was riding on the rear seat with Holland, left it, excepting La Fitte himself. He says that Holland was knocked unconscious, was left in the car, unattended, in an unconscious state, and remained there until the policeman, Garris, arrived. He says that only he and Jackson got out of the car he was driving and went over to the other car across the street, and after the lapse of ten or fifteen minutes he returned to his car, and that Holland, whom they had not missed to that time, "was just getting out" of the car. He stated that Holland then remarked to him that he was hurt on his head. The admissibility of this statement was objected to on the ground that it was hearsay, not part of the res gestæ. It was admitted subject to the objection. In

this court both sides submit extended arguments in brief, with supporting authorities, on the question of the admissibility of this testimony. La Fitte says it was about fifteen minutes after the collision, and that Holland remained in the car alone during the entire period. We do not think the testimony admissible. While it is true the admissibility of statements of this character is not primarily determined from the lapse of time involved, yet time is an important factor on the question. Here the declaration bears none of the earmarks of a spontaneous utterance of one involved in the accident; it does not "reasonably preclude the possibility of' design, deliberation or fabrication," as was held to be necessary in Donaldson v. Riddling's Succession (La. App.) 145 So. 804. The statement attributed to Holland was not prompted solely by the excitement of the event. In other words, the event was not speaking through him. State v. Molisse, 38 La. Ann. 381, 58 Am. Rep. 181. It is not necessary to the exclusion of such testimony that it be shown that the person making the statement did deliberate, design, or fabricate it, but it is necessary, to render the evidence admissible, that, under the conditions and circumstances prevailing during the moments of tenseness, the one making the statement was reasonably precluded from coolly deliberating or designing so as to fabricate in his own interest.

La Fitte also says that Holland was hurt over one eye, but he did not know which one; had a blue spot over it. No other person present heard anything about young Holland being hurt or injured in the accident. Jackson, who was riding on the rear seat with Holland, says they both got out of the car and looked things over. He heard nothing about Holland being injured. Officer Garris arrived on the scene within ten minutes after the collision and secured from each person there his name and street address, including Holland's, and sought to learn the names of all who had been injured. He talked with Holland, but nothing was said about his supposed injury. Several of the crowd, including Holland, accompanied La Fitte and Benton to the Charity Hospital to secure medical and other attention. Holland did not report to any one at the hospital that he was hurt in the collision. We are not impressed with La Fitte's testimony. Holland's action immediately after the accident, coupled with subsequent actions and other facts in the case on which we shall comment, creates in our mind serious doubt that he was injured at all when the cars collided.

Plaintiff says that when her son arrived home after the accident, there was a knot over his right eye and she treated him for it by giving aspirin and covering his head with an ice bag the balance of the night and "all the next three or four days continuously." Here we might interject that the boy's employer testified he reported for work the morning following the accident. Plaintiff further says that she succeeded in reducing the swelling over her boy's eye considerably, but the pain never left his head from that time until he died, and, not feeling satisfied about his condition, on July 16th, she carried him to the Charity Hospital for further attention and treatment. Neither plaintiff nor the boy gave any history then of him having received a blow or injury in the collision fourteen days prior.

An X-ray picture of the upper jaw and sinuses was made. It disclosed: " * * * an opacity of the right maxillary sinus. The upper right central incisor tooth is dead The root canal is filled. There is an unerupted tooth impacted apparently of the lower right jaw."

The progress notes of the hospital on July 17th disclose marked congestion of nasal mucosa and turbinatis was detected; there was yellowish discharge from the right antrum. Efforts were made to relieve these conditions. A large amount of pus was removed by suction, and the patient at times evinced signs of improvement. His mother became dissatisfied with the treatment given at the hospital, and on July 20th she removed him to the Schumpert Sanitarium. There he gave the following history: "Pt. states that about July 1st he first began to be bothered with the toothache. He states that the pain went from tooth to eye and nose, and began to suffer with terrible pain in head. He was carried to Charity Hospital for treatment. Patient kept getting worse; on July 20th he was brought to Schumpert Sanitarium. Patient had pain all in head, swelling in face. Patient had high temperature. Does not hurt patient to eat; is not constipated. Kidneys normal."

It will be noted that the toothache which the patient stated had pained him occurred about July 1st, which was prior to the date of the accident. It will also be noted that no history of a blow or injury on July 2d was given. Dr. Oden was engaged to treat the case. He performed five or six operations in and about the nose and on the sinuses. He also had an X-ray picture made which revealed opacity of the right antrum

and ethmoid sinuses, with some haziness over the frontal bone. Conclusions reached from reading the picture were: Infected right antrum and ethmoid and frontal sinuses with effusion. When asked how long the right antrum had been infected, Dr. Oden said: "I think I got a history of the man having gone in swimming five or six days prior to that—I think he had been in the Hospital three or four days—he had the swelling the day following his going in swimming."

He further stated that the boy told him that six days prior to the time he was removed to the sanitarium (which would be July 14th), a few pains were felt over the face and that swelling that followed involved the entire right side of his face; that he discussed the toothache he had had, and said it seemed like the teeth on the right side were longer than the other teeth. Dr. Oden said this symptom was to be expected in all antrum affections. It should be noted that when deceased engaged in swimming, as by him related, he, according to plaintiff's evidence, was suffering intensely from the effects of the injury of July 2d, and was not in condition to work at all. Dr. Oden did not, after his very close physical examination of the patient, discover any abscess or enlargement above the right eye. Holland was discharged from the sanitarium on September 13, 1932, though his condition was not at all as good as was desired or hoped for. He was brought back there on November 20th and, after three days, died.

In addition to the abscess of the brain, the autopsy revealed another abscess under the skin, over the right eye; that the lungs had collapsed, the appendix was inflamed, and the heart and spleen greatly enlarged beyond normal size. These conditions were due to septicaemia arising from the abscess.

Plaintiff's learned and energetic counsel argues earnestly and forcefully that both abscesses were the fruit of the injury allegedly received by young Holland in the automobile collision. We have reached the conclusion that plaintiff has not established that her son was injured at all in said collision.

The decision of plaintiff to mulct defendant and the tardy employing of counsel by her to institute this suit appear to us to be afterthoughts. Counsel was not employed until about October 9th, and the deceased only a few days prior to this date mentioned the accident to some one connected with the cab company. It seems to us most remarkable, in fact absurd, in human experience, for a person to go to two hospitals for treatment of an ailment he traces directly to an injury on a definite date, and not inform any one connected with these institutions of having suffered the injury to which he ascribes his ailment. In addition to this, the witnesses who were present when the supposed injury occurred, except one whose veracity stands materially affected, do not to the least extent verify the plaintiff's allegations as to the injury. In fact, the testimony of the mother that deceased came home with the knot over his eye is the only evidence in the record to this effect, and it is inconclusive that there was an injury to the boy. Other circumstances supporting our views could be cited.

Having reached the conclusion that deceased was not injured when the collision occurred, it is not necessary to discuss other questions a decision of which would be pertinent to a decision on the merits, if a different conclusion had been reached by us. However, we will add that after considerable study of the record, assuming for the purpose of such study that Holland received a blow over the right eye in the collision, we are not at all convinced, but, on the contrary, have most serious doubts, that there was any causal connection between the injury resulting from the blow and the brain abscess. Deceased evidently had toothache and sinus trouble before the collision. His own admissions prove this; X-ray pictures confirm it. His face was seriously involved when he went to the hospital on July 16th and remained so until operated on several times by Dr. Oden, on and after July 20th. It is shown that the abscesses were of the character, and the pus contained therein of the kind, that have their origin in sinus trouble.

The judgment appealed from is affirmed.