## WASHINGTON NAT. INS. CO. v. McLEMORE.
### No. 5122.

Court of Appeal of Louisiana. Second Circuit.

Nov. 6, 1935.

W. S. Johnson, of Shreveport, for appellant.

Bryan E. Bush, of Shreveport, for appellee.

MILLS, Judge.

On or about January 30, 1933, plaintiff received a form application for insurance signed "Andrew Jackson." It states applicant's age to be 41, height 5 feet 9 inches, weight 165 pounds, and his occupation chauffeur, with residence at 1551 Acorn street, Shreveport, La. The application was taken by the company's agent, A. E. Oberle, who, over his signature, states in it that he personally inspected applicant, witnessed his signature, and approves the application.

In due course the company, relying upon the statements contained in the application, issued its policy insuring the life of Andrew Jackson for the sum of $147, and designating, as requested, Annie McLemore, his niece, as beneficiary.

At the end of eight or nine weeks the beneficiary submitted proofs of death and claimed the benefit. The company refused payment and tendered back the premiums paid, contending that the Andrew Jackson described in the proof, who died in De Soto parish, was not the person who made the application or was intended to be insured, to the full knowledge of the beneficiary. The company alleges that deceased lived in De Soto parish; had not been in Shreveport for a number of years prior to the date of the application; was between 65 and 75 years of age; had been paralyzed for several years; and that the beneficiary had paid all premiums.

The present suit is brought by the insurer seeking a cancellation of the policy.

Defendant beneficiary admits the making of the application and issuance of the policy, denies the charges of wrongdoing, and reconvenes for the amount of the policy.

The agent testifies that a man representing himself to be Andrew Jackson signed the application at 1551 Acorn street, the home of Annie McLemore, and furnished the information contained in it. He says that Annie presented the man as Andrew Jackson and paid all premiums after the first. He remembers the man to have appeared to be around 42 or 43 years old. He never saw him afterward. A week before Annie had spoken to him about this insurance, and he had told her he could not write the application unless the insured was present.

Will Jackson, aged 49, son of deceased, says he considered his father to be 80 or 81 years old at the time of his death in March, 1933; that his father had not been to Shreveport in eleven years. Tom Jackson, aged 58, another son, testifies to the same effect.

According to Annie, the agent, Oberle, agreed to take the application without seeing the applicant, and she herself signed the name "Andrew Jackson" on the application. She does not remember what age she said her uncle was. Her husband says that only Annie and the agent were present when the application was signed, and that no one impersonated Andrew Jackson.

Mr. Kelly, local manager for plaintiff, says that after death claim had been tendered he went to Annie's place and was there told by her that her uncle had been present and had signed the application.

There was judgment below for plaintiff canceling the policy and ordering the return of the premiums as tendered. From this judgment defendant has appealed.

Whether by substituting some other person and deceiving the agent or by connivance with the agent in forging the

name of Andrew Jackson and falsely representing him to be 41 years of age, when he was over 80, and. employed in Shreveport as a chauffeur, when in reality he was in Mansfield almost at the point of death and had not been in Shreveport for more than ten years, the defendant beneficiary perpetrated a fraud on the insurance company. Considering the small stake that the agent had in the matter, and that the purported signature of Andrew Jackson bears no resemblance to the authentic handwriting of Annie McLemore appearing in the record, and further considering that her sister and chief witness perpetrated the same fraud at the same time on another company, we are inclined to accept the agent's story as to the transaction.

The purely technical defense is based upon defendant's objection to testimony as to the falsification of the application because of the following provision in section 2 of Act No. 227 of 1916 (page 492): "That every policy of insurance issued or delivered within the State on or after the first day of January, nineteen hundred and seven, by any life insurance corporation doing business within the State shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are endorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties, and no statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued. Any waiver of the provisions of this section shall be void."

An examination of the policy discloses that the name of the assured is given in it as Andrew Jackson, and his age as 41 years. The age of assured is then a part of and included in the contract.

Act No. 160 of 1934 provides that industrial life insurance companies shall require a written application signed by the applicant, which shall form a part of the policy issued thereon, whether or not it is attached to or indorsed upon the policy, and, further, that fraud shall always be a defense against any suit by the assured where an application has been obtained.

Industrial life insurance is, by section 1 of Act No. 240 of 1916, defined to be that wherein the premiums are payable at periods not exceeding one calendar month apart and are for sums not exceeding $500 on a single life. In this case the policy is for $147, and the premium is fixed at 15 cents, payable weekly.

The policy in this case was issued February 13, 1933, before, and the case tried on the 7th day of March, 1935, after, the enactment of Act No. 160 of 1934.

"Remedial statutes and statutes governing procedure have application to all actions brought subsequent to their promulgation." State v. Brossette, 163 La. 1035, 113 So. 366, 367; Rossville Commercial Alcohol Corporation v. Dennis Sheen Transfer Co., 18 La. App. 725, 138 So. 183.

"A remedial statute is one which confers a remedy and a remedy 'is the means employed to enforce a right or redress on injury.'" Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 630, 97 A. L. R. 1184; Dehan v. Hotel and Restaurant Employees et al. (La. App.) 159 So. 637.

Procedure is defined by Bouvier as: "The term is so broad in its signification that it is seldom employed in our books as a term of art. It includes in its meaning whatever is embraced by the three technical terms pleading, evidence and practice, and practice in this sense means those legal rules which direct the course of proceeding to bring parties into court and the course of the court after they are brought in; and evidence as a part of procedure signifies those rules of law whereby we determine what testimony is to be admitted and what rejected in each case and what is the weight to be given to the testimony admitted."

Considering these authorities and Act No. 160 of 1934, we think that the testimony objected to was admissible, and that, as it clearly proves fraud on the part of defendant in obtaining the issuance of the policy, the judgment ordering its cancellation is correct. It is accordingly affirmed.