887 F.2d 611
 1990 A.M.C. 1780
 In the Matter of TALBOTT BIG FOOT, INC., et al.
TALBOTT BIG FOOT, INC., Patterson Gulf Coast Drilling Co.,
Inc., and Patterson Gulf Coast Drilling
Associates, Ltd., Plaintiffs,
v.
Richard BOUDREAUX et al., Defendants-Appellants,
v.
ASSURANCEFORENINGEN GARD, Third-Party Defendant-Appellee.
 No. 88-3612.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 2, 1989.
 
 Lawrence N. Curtis, Lafayette, La., for Boudreaux.
 T. Peter Breslin, Matairie, La., for Mrs. Percy Barbier and Wilson.
 Estelle E. Mahoney, Louis J. St. Martin, Houma, La., for Johnny Nichols.
 Jed Gremillion, Lafayette, La., for Karen D. Barbier.
 Winston Edw. Rice, Docia Dalby, Rice, Fowler, Kingsmill, Vance & Flint, New Orleans, La., for third party defendant-appellee.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, DAVIS and DUHE, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 Appellants, three injured workers and the legal representative of one deceased worker, appeal the dismissal of their actions against the P & I insurer of a drilling barge that sank in the Gulf of Mexico in Louisiana coastal waters. We disagree with the district court's conclusion that appellants must wait until the insured and insurer have arbitrated policy coverage disputes before appellants can proceed against the insurer under the Louisiana Direct Action Statute. Accordingly, we reverse and remand.
 
 I.
 
 2
 On December 31, 1986, a cable snapped on the jackup drilling barge, the BIG FOOT II, in Louisiana coastal waters. Percy Barber was thrown into the Gulf and later drowned. Joel P. Wilson, Richard Boudreaux, and Johnny Nichols received injuries in the accident. Talbott Big Foot, Inc., Patterson Gulf Coast Drilling Co., Inc., and Patterson Gulf Coast Drilling Associates, Ltd. (Patterson), filed a limitation of liability proceeding in the district court. Representatives of the deceased and injured parties filed claims in the limitation proceeding. Patterson's insurer, Assuranceforeningen Gard (Gard), denied coverage to Patterson and Patterson filed a third party demand against Gard. The personal injury and death claimants then brought a direct action against Gard. Based upon an arbitration clause in the P & I policy requiring the insurer and insured to arbitrate coverage disputes,[1] Gard filed a motion for summary judgment seeking dismissal of the claimants' direct action and alternatively a motion to stay proceedings pending arbitration of coverage disputes between Gard and Patterson. The district court granted Gard's motion for summary judgment and dismissed claimants' direct action. The district court reasoned that the claimants had no right to pursue their direct action against Gard until Patterson and Gard had arbitrated their policy coverage disputes. The court entered judgment pursuant to Fed.R.Civ.P. Rule 54(b) and an appeal from that judgment was timely filed.
 
 II.
 
 3
 This appeal presents two related issues: 1) whether the injured claimants can proceed directly against Gard under the Louisiana Direct Action Statute despite the arbitration clause in the policy that obligates Patterson and Gard to arbitrate any policy coverage disputes; 2) if the Louisiana Direct Action Statute does authorize the injured claimants to proceed against Gard irrespective of the ongoing arbitration proceeding between Patterson and Gard, whether this violates any federal policy favoring arbitration?
 
 A.
 
 4
 The first question raised by this appeal is one of Louisiana law. More particularly, we are required to interpret La.Rev.Stat.Ann. Sec. 22:655, the Louisiana Direct Action statute, which provides in part that:
 
 
 5
 The injured person ... shall have a right of direct action against the insurer within the terms of the policy.... This right of direct action shall exist ... whether or not such policy contains a provision forbidding such direct action....
 
 
 6
 It is the intent of this section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured provided the terms and conditions of such policy are not in violation of the laws of this state.
 
 
 7
 Appellant argues that when the Louisiana Direct Action Statute applies,[2] the injured party has an immediate right of action against the liability insurer regardless of policy terms that seek to forbid or delay that action. Gard concedes the applicability of the Louisiana statute; it argues, however, that the arbitration clause, as a "term" and "lawful condition" of the liability policy, limits the plaintiffs' direct action. Gard reasons that the direct action plaintiffs can have no greater rights than the insured; because the insured must arbitrate the coverage dispute before it can litigate with Gard, Gard argues that the injured plaintiffs must await the arbitration before prosecuting a direct action. We conclude that Louisiana courts have not read the Direct Action Statute so narrowly and therefore reject Gard's argument.
 
 
 8
 Despite the statute's language that the right of direct action is "within the terms and limits" and subject to "lawful conditions" of the policy, terms and conditions of the policy that have the effect of defeating the purpose of the Direct Action Statute have been disregarded by Louisiana courts. Louisiana courts have, for example, consistently annulled "no action" clauses--clauses that require the victim to obtain a judgment against the insured before suing the insurer--although these clauses are unquestionably a "term" or "condition" of the policy. See Ruiz v. Clancy, 182 La. 935, 162 So. 734 (1935); Hidalgo v. Dupuy, 122 So.2d 639, 644 (La.App.1960); Graham v. American Employers Insurance Co. of Boston, 171 So. 471, 476 (La.App.1937); Robbins v. Short, 165 So. 512 (La.App.1936); Jones v. Shehee Ford Wagon & Harness Co., 157 So. 309, 315 (La.App.1934); Holland v. Owners Automobile Insurance Co., 155 So. 780, 781 (La.App.1934); Boujon v. Volunteers of America, 151 So. 797, 801 (La.App.1934). As the Louisiana Supreme Court stated in refusing to enforce a no action clause, such clauses "must yield" to the provisions of the direct action statute. See Ruiz, 162 So. at 735. One Louisiana appellate court, annulling a no action clause, explained: "The insurer cannot insert 'terms and limits' in a policy that would contravene the right of the injured party to bring a direct action as provided by the Act." Rambin v. Southern Sales Co., 145 So. 46, 50 (La.App.1932). Consistent with this view, the authors of the leading treatise on Louisiana insurance law state: "The insurer can raise those defenses which it could raise in an action against it by its insured which do not defeat the public policy underlying the right of direct action in the victim." W. McKenzie & H. Johnson, Insurance Law and Practice 27, at 56 n. 21.
 
 
 9
 The arbitration clause, as Gard seeks to use it, and the no action clause are indistinguishable in the effect their enforcement has on the plaintiffs' direct action. Both purport to require an injured party to await the outcome of another proceeding before he can file an action against the insurer: A no action clause requires a plaintiff to await the outcome of a separate suit to determine the insured's liability; the arbitration clause, as Gard seeks to use it, requires the injured parties to await a separate arbitration proceeding in which coverage is determined.
 
 
 10
 Because the arbitration clause in Gard's policy is indistinguishable in principle from the proscribed no action clauses, we conclude that the arbitration clause cannot be used by Gard to delay the plaintiffs' direct action. The district court therefore erred in concluding as a matter of Louisiana law that Gard could invoke the arbitration provisions of its policy to defeat the injured plaintiffs' direct action.
 
 B.
 
 11
 Gard argues alternatively that even if Louisiana law permits the appellants to maintain a direct action despite the arbitration clause in its insurance policy, the strong federal policy favoring arbitration should override any contrary Louisiana policy. This would be a powerful argument if appellants were parties to the contract that contains the arbitration clause. But appellants are not parties to the Gard P & I policy. We are unaware of any federal policy that favors arbitration for parties who have not contractually bound themselves to arbitrate their disputes.
 
 
 12
 The source of the strong federal policy favoring arbitration is the Federal Arbitration Act, 9 U.S.C. Secs. 1-14. But the Act does not require arbitration unless the parties to a dispute have agreed to refer it to arbitration. See AT & T Technologies v. Communications Workers, 475 U.S. 643, 647-48, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986); Del E. Webb Const. v. Richardson Hosp. Authority, 823 F.2d 145, 148 (5th Cir.1987); Interocean Shipping Co. v. National Shipping & Trading Corp., 523 F.2d 527, 538-39 (2d Cir.1975), cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). Likewise, the mandatory stay provision of the Act does not apply to those who are not contractually bound by the arbitration agreement. See Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc., 761 F.2d 198, 203 n. 6 (5th Cir.1985); Nederlandse-Erts Tankersmaatschappij v. Isbrandtsen Co., Inc., 339 F.2d 440, 441 (2d Cir.1964).[3] Obviously the appellants, who are not parties to Gard's P & I policy, have not agreed to arbitrate their claims or defer their action while the insurer and insured arbitrate coverage disputes. Thus, the Federal Arbitration Act, the source of the federal policy favoring arbitration, has no application to require appellants to arbitrate or to stay their lawsuits. Hence, this alternate argument is also without merit.[4]
 
 C.
 
 13
 Although Gard is not entitled to dismissal of appellant's action nor a stay of that action as a matter of law, Gard may be entitled to a discretionary stay. See Moses H. Cone v. Mercury Const. Corp., 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765, 782 n. 23 (1983); American Home Ins. v. Vecco Concrete Construction, 629 F.2d 961, 964 (4th Cir.1980); Sam Reisfeld & Son Import Co. v. S. A. Eteco, 530 F.2d 679, 681 (5th Cir.1976). Thus, as a prudential matter the district court may, if appropriate, stay the injured parties' action for a brief time to permit the arbitration proceeding to go forward.
 
 
 14
 If the district court does issue a stay order, it must place reasonable limits on its duration. GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir.1985); Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir.1983). Approximately twenty-two months have elapsed since the arbitration process began, and it has apparently not been completed. On the surface this delay seems inordinate. Nevertheless we are persuaded that Gard should have an opportunity to explain this delay to the district court and demonstrate that the arbitration is proceeding with dispatch and will be terminated very shortly. If this showing cannot be made, a stay should be denied.
 
 
 15
 The judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 16
 REVERSED and REMANDED.
 
 
 
 [1]
 The clause provided in pertinent part: "[D]isputes between the Association and ... an Assured ... arising out of ... the contract of insurance, shall be resolved by Arbitration."
 
 
 [2]
 Gard does not contend that the Louisiana Direct Action Statute cannot apply to a marine liability insurance policy such as a P & I policy. See Crown Zellerbach Corp. v. Ingram Indus., Inc., 783 F.2d 1296 (5th Cir.1986) (en banc)
 
 
 [3]
 The convention on the recognition and enforcement of foreign arbitral awards may have some application, but that convention simply adopts the provisions of the Federal Arbitration Act. See 9 U.S.C. Sec. 201. See also Sedco v. Petroleos Mexicanos Mexican National Oil, 767 F.2d 1140 (5th Cir.1985)
 
 
 [4]
 The question would be closer if the insured, Patterson, and the plaintiffs could be considered in privity so that an arbitrator's award in Gard's favor would have preclusive effect against the plaintiffs. See Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir.1975). We disagree with Gard that Patterson is an adequate representative of appellants so as to be in privity with appellants. Privity in this context requires some type of legal relationship between the two entities so that the one engaged in the litigation is legally accountable to the other. See Benson and Ford, Inc. v. Wanda Petroleum, 833 F.2d 1172, 1175 (5th Cir.1987); Pollard v. Cockrell, 578 F.2d 1002, 1008 (5th Cir.1978). Mere alignment of interests is not sufficient to establish privity. Benson and Ford, 833 F.2d at 1175; Freeman v. Lester Coggins Trucking, Inc., 771 F.2d 860, 864 (5th Cir.1985). See also New Amsterdam Casualty Co. v. Murray, 242 F.2d 549, 550 (6th Cir.1957); Shapiro v. Republic Indemnity Co. of America, 52 Cal.2d 437, 341 P.2d 289, 291 (1959); Collard v. Universal Auto. Ins. Co., 55 Idaho 560, 45 P.2d 288, 291 (1935); Dransfield v. Citizens Casualty Co. of New York, 5 N.J. 190, 74 A.2d 304, 306 (1950); Glandon v. Searle, 68 Wash.2d 199, 412 P.2d 116, 118-19 (1966)