# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-02415-SCT

*EDDIE ADAMS AND BETH BROWN*

*v.*

*GREENPOINT CREDIT, LLC AND SECURITY*
*BANK OF AMORY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/2004 |
| TRIAL JUDGE: | HON. SHARION R. AYCOCK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | W. HOWARD GUNN |
| ATTORNEYS FOR APPELLEES: | MICHAEL STEPHEN MACINNIS |
| | C. MICHAEL MALSKI |
| | JON JERDONE MIMS |
| | JEFFREY DALE RAWLINGS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND VACATED IN PART, AND THE JUDGMENT OF THE CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 12/07/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     This Court granted the petition for writ of certiorari filed by GreenPoint Credit, LLC

("GreenPoint") to address the issue of whether Beth Brown, like her father, Eddie B. Adams,

should be compelled to submit to arbitration.  The Mississippi Court of Appeals ruled that

Adams was compelled to submit to arbitration, but that Brown's claims were not subject to arbitration.

**FACTS**

¶2.    On August 5, 1998, Eddie B. Adams and his wife, Linda G. Adams, purchased a used mobile home.  On the same date, they entered into a "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone (Contract)" with creditor BankAmerica Housing Services.[1]  The applicable provisions are:

> a. Dispute Resolution. *Any controversy or claim* between or among *you or me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall*, if requested by either you or me, *be determined by arbitration, reference, or trial by judge as provided below*.  A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below.  Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below.  YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.
>
> b. Arbitration. Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be conducted in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract.  The Commercial Rules of the American Arbitration Association ("AAA") also shall apply. The arbitrator(s) shall follow the law and shall give effect to statutes of limitation in determining any claim.  Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s).  The award of the

---

[1]The contract was assigned to GreenPoint.

arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.

(Emphasis added).

¶3.     On January 31, 2001, GreenPoint drafted $232.69 from the joint checking account of Eddie Adams and Beth Brown, at Security Bank of Amory ("Security Bank"). The check was "Signed: Linda G. Adams" by "Authorized Representative Greenpoint Credit."[2] On February 15, 2001, Adams and Brown discovered that GreenPoint had presented the draft to Security Bank. Adams's affidavit states that he then:

> went to the Bank and told a bank officer or employee that the draft was unauthorized, that my wife was *dead* and not on this account and, hence, could not [have] authorized a draft on it. We again notified the Bank of the unauthorized draft and complained about the checks being returned for insufficient funds on our account when we received notification of the checks being returned for insufficient funds on or about March 15, 2001.

(Emphasis added). Adams and Brown subsequently sued GreenPoint and Security Bank[3] in the Circuit Court of Monroe County alleging that:

> [a]s a proximate result of the concurrent and combined aforesaid acts of Defendants, Plaintiffs' account was unlawfully subjected to the aforesaid draft issued by GreenPoint ... As a further proximate result of the aforesaid illegal and wrongful draft upon Plaintiffs' aforesaid account, checks which were lawfully written by Plaintiffs on said account were returned for non-sufficient funds, and as a result of same an arrest warrant was issued for Plaintiffs, subjecting Plaintiffs to humiliation, embarrassment, defamation, mental stress, and other damages.

---

[2]Linda G. Adams was deceased at the time the draft was presented.

[3]Security Bank is not a party to this appeal.

Adams and Brown asserted claims of fraud, negligence, intentional and/or negligent inflication of mental and emotional distress, breach of contract, and defamation.

¶4. GreenPoint filed a motion to dismiss and to compel arbitration arguing that "[p]ursuant to the terms of the Agreement and applicable law, the claims brought in this action are subject to binding arbitration and Plaintiffs may not proceed with this action." In response, Adams and Brown argued that the arbitration clause was unconscionable, inapplicable to their claims, and otherwise unenforceable.

¶5. Subsequently, GreenPoint filed a motion to stay discovery arguing that:

> [a]ny action taken by GreenPoint inconsistent with enforcement of the arbitration clause, including participating in discovery, may adversely affect GreenPoint's rights to enforce the arbitration clause. *See Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908 (Miss. 1993), and Miss. Code Ann. Section 11-15-103. Discovery in this action should be stayed until GreenPoint's arbitration motion has been decided.

Adams and Brown responded by filing a motion to compel "GreenPoint Credit to respond to the discovery as tendered to it."

¶6. The circuit court heard GreenPoint's motion to dismiss and to compel arbitration. In its subsequent order, the court *granted* the motion to dismiss and to compel arbitration as to the claims asserted against GreenPoint, finding that "[p]ursuant to the terms of the Agreement and applicable law, Eddie Adams and Beth Brown are bound to submit their claims to arbitration ... as required by the Agreement." Thereafter, Adams and Brown filed their notice of appeal.

¶7. On appeal, the Mississippi Court of Appeals was presented with two issues: (1) whether Adams's claims were subject to arbitration and (2) whether Brown's claims were

4

subject to arbitration under the terms of the contract previously executed by her parents. *See*

***Adams v. GreenPoint Credit, LLC***, 2006 Miss. App. LEXIS 64, at *6-8 (Miss. Ct. App.

2006). The Court of Appeals affirmed in part and reversed and remanded in part, finding that

Adams was properly compelled to submit to arbitration, while Brown was not. *See id*. at

*11-12. As to Adams, the Court of Appeals found that:

> the arbitration agreement states that 'any controversy or claim between or among you and me or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort' is subject to arbitration.

*Id*. at *7-8. As "[t]he torts alleged by Adams arise from the allegedly unauthorized draft of

a payment due under a contract that called for arbitration[,]" *id*. at *8, the Court of Appeals

concluded that the circuit court was correct in finding that Adams's claims were subject to

arbitration. Regarding Brown, however, the Court of Appeals relied upon ***Smith Barney,***

***Inc. v. Henry***, 775 So. 2d 722, 727 (Miss. 2001), for the proposition that "arbitration

agreements are enforceable to non-signatories to the contract when the non-signatory party

is a *third-party beneficiary*." ***Adams***, 2006 Miss. App. LEXIS 64, at *9 (emphasis added).

The Court of Appeals found that:

> Greenpoint has failed to show that Brown is a third-party beneficiary to the contract Adams signed to finance his mobile home. The rights of a third-party beneficiary must 'spring' from the terms of the contract. ***Burns v. Washington Savings***, 251 Miss. 789, 796, 171 So. 2d 322, 325 (1965). No right against the contract promisor or promisee is acquired by a mere incidental beneficiary. ***Hartford Accident & Indemnity Co. v. Hewes***, 190 Miss. 225, 199 So. 93, 95, 199 So. 772 (1940). There is no proof in the record that Brown owned the mobile home jointly with Adams, lived in the mobile home, or benefitted from the financing agreement in any way.

Brown did not sign an agreement to arbitrate and did not directly benefit from the financing agreement Adams and his wife signed. Therefore, Brown's claims are not subject to arbitration.

*Adams*, 2006 Miss. App. LEXIS 64, at *9. The Court of Appeals then determined that "allowing Brown to litigate her claims while Adams' claims are subject to arbitration would impair Greenpoint's right to arbitrate." *Id*. at *11. As such, the Court stayed Brown's claims "until the arbitration proceedings with respect to Adams' claims are completed." *Id*.

¶8. After the Court of Appeals denied GreenPoint's motion for rehearing, GreenPoint filed a petition for writ of certiorari with this Court. In its petition, GreenPoint argued that:

> no discovery was conducted to inquire into Brown's status as a third party beneficiary. Indeed, no such discovery could be conducted by GreenPoint without ironically jeopardizing its right to seek arbitration. Nevertheless, GreenPoint contends no such discovery is necessary because Brown directly seeks benefits from the contract through her claims for damages which arise directly from a payment dispute under the contract.

This Court granted GreenPoint's petition for writ of certiorari.

## ISSUES

¶9. This Court agrees with the conclusion of both the circuit court and the Court of Appeals that Adams's claims are subject to arbitration pursuant to the terms of the contract he signed. The arbitration agreement stated:

> *[a]ny controversy or claim* between or among *you or me* or our assignees *arising out of or relating to this Contract* or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by judge as provided below.

See ***Doleac v. Real Estate Professionals, LLC***, 911 So. 2d 496, 504 (Miss. 2005) (applying arbitration clause to tort claims arising under agreements).

6

¶10. Therefore, we are left with the issue:

I. Was the trial court correct in ordering Brown to arbitration or was the Court of Appeals correct in finding that Brown, as a non-signatory to the contract, had a right to have her claims adjudicated in a court of law?

## STANDARD OF REVIEW

¶11. "The grant or denial of a motion to compel arbitration is reviewed *de novo*." ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002) (citing ***Webb v. Investacorp, Inc.***, 89 F.3d 252, 256 (5th Cir. 1996)) (emphasis added).

## ANALYSIS

**I.  Was the trial court correct in ordering Brown to arbitration or was the Court of Appeals correct in finding that Brown, as a non-signatory to the contract, had a right to have her claims adjudicated in a court of law?**

¶12. GreenPoint acknowledges that Beth Brown did not sign the contract.  However, it argues that:

[t]he Agreement specifically provides that related claimants or claims arising from the same transaction are subject to arbitration.  Beth Brown is alleged to be the daughter of Eddie Adams and their claims are identical and arise from the same transaction.  Therefore, the claims of Beth Brown are also subject to arbitration.

In spite of the fact that GreenPoint complains it cannot conduct needed discovery without "jeopardizing its right to seek arbitration[,]" it contrastingly asserts that:

*no such discovery is necessary* because Brown directly seeks to benefit from the contract by joining in the claims of Adams for damages allegedly caused by a payment dispute under the contract.  But for the contract with Greenpoint, Brown would have no dispute with Greenpoint over a payment and whether or not said payment was authorized to be deducted from a checking account co-owned by [Adams and Brown].

7

(Emphasis added). Furthermore, GreenPoint unpersuasively argues that Brown implicitly benefitted under the contract by joining the claims of Adams, and that Brown should be required to prove a negative, i.e. "[she] has presented no evidence that she has not benefitted from the Contract."

¶13. Brown responds that she "was not a party to the contract, a beneficiary of the contract, and had no dealings whatsoever with Greenpoint." In short, "[s]he was a total stranger to the contract and its arbitration clause." As such, she asserts that "[n]othing in the Federal Arbitration Act authorizes a court to compel parties not covered by the agreement to arbitrate their claims." *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); *Fleetwood Enterprises, Inc. v. Gaskamp*, 303 F.3d 570 (5th Cir. 2002). Adams and Brown insist that they never authorized GreenPoint "to draft such account. ... Linda Adams, wife of Eddie Adams, was dead at the time Greenpoint alleged such authorization was made and, hence, could not have authorized same." Brown asserts that her "constitutional right to a trial by jury ... cannot be taken away from her under the circumstances of this case." *See* Miss. Const. art. 3, Section 31.

¶14. This Court has "readily acknowledged that there is a strong federal policy favoring arbitration." *Pre-Paid Legal Services v. Battle*, 873 So. 2d 79, 84 (Miss. 2004) (citations omitted). *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (quoting *Volt Information Science, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)) ("when a court interprets such provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities

8

as to the scope of the arbitration clause itself resolved in favor of arbitration.'"). Despite that policy, however, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ***Pre-Paid Legal***, 873 So. 2d at 83 (quoting ***AT&T Technologies, Inc. v. Communications Workers of America***, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986)). *See also **Waffle House***, 534 U.S. at 279 ("[n]o one asserts that the EEOC is a party to the contract, or that it agreed to arbitrate its claims. It goes without saying that *a contract cannot bind a non-party*. Accordingly, the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so.") (emphasis added); ***Equifirst Corp. v. Jackson***, 920 So. 2d 458, 461 (Miss. 2006). GreenPoint concedes that Brown did not sign the contract. Moreover, the arbitration provision covers "you or me or our assignees ... ." Clearly, Eddie and Linda Adams constitute the "you;" the "me" is GreenPoint; and no claim is being made that Brown is an assignee. The plain language of the provision does not extend to Brown.

¶15.    However, arbitration agreements can be enforced against non-signatories if such non-signatory is a third-party beneficiary. *See **Smith Barney, Inc. v. Henry***, 775 So. 2d 722, 727 (Miss. 2001). In ***Burns***, this Court stated:

> [t]he principle that one not a party or privy to a contract but who is the beneficiary thereof is entitled to *maintain an action for its breach* is not so far extended to give a third person who is only indirectly and incidentally benefitted by the contract the right to sue upon it. A mere incidental, collateral, or consequential benefit which may accrue to a third person by reason of the performance of the contract, or the mere fact that he has been injured by the breach thereof, is not sufficient to enable him to maintain an action on the contract. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefitted does not give him a right to sue for its breach. 17 Am. Jur. 2d

9

> *Contracts* § 307, at 732-33 (1964). Rest. of the Law *Contracts* § 133 (1932); Annot. 81 ALR 1287 (1932).
>
> In order for the third person beneficiary to have a cause of action, *the contracts* between the original parties must have been *entered for his benefit*, or at least *such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms*. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. The obligation must have been a legal duty which connects the beneficiary with the contract. In other words, the *right of the third party beneficiary* to maintain an action on the contract *must spring from the terms of the contract itself*. 17A C.J.S. *Contracts* 519(4) (1963).

*Burns*, 251 Miss. at 796, 171 So. 2d at 325. This Court has cited the United States Supreme Court for the proposition that, "'we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.'" *See B.C. Rogers Poultry Inc. v. Wedgeworth*, 911 So. 2d 483, 487 (Miss. 2005) (quoting *Waffle House*, 534 U.S. at 294). Nothing in the plain language of the arbitration provision indicates a clear intent of the parties to make Brown a third-party beneficiary. She did not sign the contract, was in no way alluded to in the contract, and, based on the record before us, received no benefits from the contract. As a non-signatory, non-third-party beneficiary, Brown is effectively a stranger to the contract. Furthermore, her suit is not "to maintain an action for its breach[;]" *Burns*, 251 Miss. at 796, 171 So. 2d at 325, there is no evidence that the contract was "entered for [her] benefit[;]" *id*., there is no evidence that any benefit flowed to her as a "direct result of the performance within the contemplation of the parties as shown by its terms[;]" *id*., or that her suit "spring[s] from the terms of the contract itself." *Id*. As Brown is *not* a third-party beneficiary to whom the benefits of the contract attach, she is not bound by the arbitration provision.

10

¶16.   Neither does the record support binding Brown to the arbitration provision under the doctrine of equitable estoppel, which is an extraordinary remedy to be used with caution. *See* **B.C. Rogers**, 911 So. 2d at 491.  In **B.C. Rogers**, this Court stated that "equitable estoppel exists where there is a (1) belief or reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." *Id*. at 492.  That test is not satisfied, as GreenPoint has not asserted facts to support its application. The record does not reflect that GreenPoint relied upon and detrimentally changed its position as a result of representations made by Brown.

¶17.   Brown's parents entered into a contract to purchase a used mobile home financed by GreenPoint.  Sometime thereafter, Brown and Adams opened a joint checking account at Security Bank.  GreenPoint allegedly presented an unauthorized draft on that account, causing checks written by Adams and Brown to bounce.  In short, GreenPoint is asserting that the mere existence of a joint checking account with her signatory father should compel a non-signatory, non-third-party beneficiary to the arbitration provision.  Clearly, this is *not* a situation where the "extraordinary remedy," *id*. at 491, of equitable estoppel should be considered, much less, invoked.

**CONCLUSION**

¶18.   Based upon the aforementioned analysis, we conclude that the Court of Appeals correctly found Adams subject to arbitration under the contract he signed with GreenPoint, while Brown is not constrained by same.  However, we also conclude that the Court of Appeals erred in granting a stay in the circuit court proceedings of Brown against GreenPoint and Security Bank.  The circuit court, in finding both Adams and Brown compelled to

11

arbitrate, properly stayed proceedings and "retained jurisdiction to confirm the arbitration decision, if any." However, this Court, like the Court of Appeals, finds that Brown's action against GreenPoint does not emanate from the subject contract. As such, Brown is not precluded from pursuing her action against GreenPoint and Security Bank until Adams's arbitration is completed. *See Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989) ("the mandatory stay provision of the Act does not apply to those who are not contractually bound by the arbitration agreement ... ."). Simultaneously, however, we acknowledge that our courts experience crowded dockets and our trial judges diligently pursue the resolution of the cases on their dockets. Therefore, on remand it lies within the circuit judge's discretion "to stay the claims between the nonarbitrating parties pending outcome of the arbitration simply as a means of controlling its docket." *In re Hornbeck*, 981 F.2d 752, 755 (5th Cir. 1993). In exercising that discretion, the circuit judge should seek "to secure the just, speedy, and inexpensive determination of every action." Miss. R. Civ. P. 1. Therefore, the judgment of the Court of Appeals is affirmed in part and vacated in part, and the circuit court judgment is affirmed as to Adams, reversed as to Brown, and remanded with instructions as to the stay.

¶19.   **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND VACATED IN PART, AND THE JUDGMENT OF THE CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION.**