# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 18, 2010

No. 09-30177

Charles R. Fulbruge III
Clerk

ANTHONY TODD

Plaintiff-Appellee

v.

STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, WIENER, BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Appellant Steamship Mutual Underwriting Association (Bermuda) Limited ("Steamship") appeals from the district court's denial of its motion to compel Appellee Anthony Todd to arbitrate his claims against Steamship. The district court premised its denial exclusively on our previous decision in *Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997). We conclude that the Supreme Court's recent opinion in *Arthur Andersen LLP v. Carlisle*, released after Steamship filed this appeal, has effectively overruled *Zimmerman*. 129 S. Ct. 1896 (2009). As a result, we

reverse the district court's dismissal of Steamship's motion and remand this case for further proceedings to determine whether Todd can be compelled to arbitrate.

I.

Early in 2000, Todd was injured while serving as a chef onboard the M/V AMERICAN QUEEN, a replica steamboat owned and operated by the Delta Queen Steamboat Company ("Delta Queen"). When the injury occurred, the ship was cruising along the Mississippi River in the state of Louisiana. In 2001, Delta Queen filed for bankruptcy protection, but Todd won approval from the bankruptcy court to proceed with a suit against Delta Queen. Eventually, Todd won a judgment against Delta Queen in Louisiana state court in 2007, but Delta Queen has yet to satisfy this judgment.[1]

At the time of Todd's injury, Steamship insured Delta Queen against liability for injuries to its employees. In 2008, Todd filed suit in Louisiana state court against Steamship, attempting to collect on his judgment against Delta Queen. Todd's suit is authorized by Louisiana's "direct action" statute, which allows injured individuals to proceed directly against insurers when an insured tortfeasor is insolvent. *See* La. Rev. Stat. Ann. § 22:1269 (2009).[2] Todd raised four causes of action against Steamship, asserting that (i) Steamship is liable to

---

[1] Delta Queen appealed, but the Louisiana Fourth Circuit Court of Appeal largely affirmed the judgment in favor of Todd. However, it remanded the case to the civil district court for recalculation of the sum due Todd for wages lost due to his injury. *See Todd v. Delta Queen Steamboat Co.*, 15 So. 3d 107, 113-14 (La. App. 4th Cir. 2008), *aff'd on reh'g*, 15 So.3d 107 (La. App. 4th Cir. 2009).

[2] Section 22:1269 arguably creates two distinct rights of action, but Todd has not specified under which he is proceeding against Steamship. First, section 22:1269(A) authorizes an injured individual to proceed against an insurer after he or she has obtained an executory judgment against an insolvent insured. Second, section 22:1269(B) allows an injured individual to proceed directly against an insolvent tortfeasor's insurer, even without a prior judgment against the insured tortfeasor.

No. 09-30177

Todd for his injuries onboard the M/V AMERICAN QUEEN, less any deductible, (ii) Steamship failed to negotiate with Todd in good faith, (iii) Steamship failed to make reasonable efforts to settle with Todd, and (iv) Steamship's "members"—i.e., other entities insured by Steamship—should be declared jointly and severally liable to Todd.

In response, Steamship removed this suit to federal district court. It then asked the district court to stay the proceedings and to compel Todd to arbitrate his claims pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. Steamship argued that since all of Todd's causes of action derive from Delta Queen's policy with Steamship, he should be bound by the clause in the policy requiring Delta Queen to arbitrate certain disputes with Steamship.[3] However, the district court ruled that it would not compel arbitration, as it found that our decision in *Zimmerman* foreclosed referring this case to arbitration. Indeed, the court found *Zimmerman* to be so dispositive that it decided not to write an opinion explaining its decision, as it concluded that writing anything at all would be merely "wasting trees." Steamship has now appealed the district court's denial of its motion to stay this case and compel arbitration.

II.

---

[3] The clause provides that:

If any difference or dispute shall arise between a Member and the Club concerning . . . the insurance afforded by the Club under these Rules, or any amount due from the Club to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Directors. . . . If the Member does not accept the decision of the Directors the difference or dispute shall be referred to the arbitration of two arbitrators, one to be appointed by each of the parties, in London . . . .

No. 09-30177

We have appellate jurisdiction over this case under 9 U.S.C. §§ 16(a)(1)(A) and 16(a)(1)(C), which allow us to hear interlocutory appeals from orders "refusing a stay of any action under" the Federal Arbitration Act ("FAA") and orders "denying an application under [the New York Convention] to compel arbitration." *See Carlisle*, 129 S. Ct. at 1900 ("[A]ny litigant who asks for a stay under [the FAA] is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible for a stay."). When we exercise this jurisdiction, we review denials of motions to compel arbitration de novo. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

Before we begin our analysis, we provide some brief background to help orient the reader with respect to the relationship between the New York Convention and the primary domestic source of federal arbitration law, the FAA, 9 U.S.C. §§ 1-16 (2006). In this case, Steamship must seek relief at least in part under the New York Convention, as Steamship seeks to compel Todd to arbitrate outside the United States.[4] However, the FAA has some application to this case. The Convention's implementing legislation incorporates the entire FAA, at least to the extent that the FAA does not conflict with the Convention. *See* 9 U.S.C. § 208; *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir. 1997) (explaining that "the FAA and the Convention have 'overlapping coverage' to the extent that they do not conflict" (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir.1983)). For example, the Convention

---

[4]    Under the FAA, district courts may only refer cases to arbitration within their own district. *See* 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."). However, the New York Convention's implementing legislation "authorizes district courts to order parties to proceed with a Convention arbitration even outside the United States." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985).

and its implementing legislation do not explicitly authorize staying litigation pending arbitration, and thus parties whose arbitration agreements fall under the Convention have had to seek authority for stays under 9 U.S.C. § 3, a provision of the domestic FAA. *See, e.g.*, *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 77-78 (1st Cir. 2000); *Energy Transp., Ltd. v. M.V. San Sebastian*, 348 F. Supp. 2d 186, 201 (S.D.N.Y. 2004).

With this prologue complete, we now turn to the issues raised by this case. As explained above, the district court found that our decision in *Zimmerman* foreclosed ruling in favor of Steamship, and consequently it denied Steamship's motion to compel arbitration without authoring an opinion. However, after the district court denied Steamship's motion, the Supreme Court released its opinion in *Carlisle*. We conclude that *Carlisle* effectively overrules *Zimmerman*, at least insofar as *Zimmerman* would apply in this case to prevent Steamship from compelling Todd to arbitrate his claims. Additionally, we find that *Carlisle* also effectively overrules our earlier decision in *In re Talbott Big Foot, Inc.*, which is factually indistinguishable from *Zimmerman*. 887 F.2d 611 (5th Cir. 1989). As a result, since we have not benefitted from a full airing below of the issues presented by this case, we remand Todd's action to the district court for a determination of whether Todd can be compelled to arbitrate now that *Zimmerman* has been displaced. Nevertheless, we write to provide guidance for the district court on remand and to explain why we conclude that *Carlisle* invalidates *Zimmerman* and *Big Foot*.

A.

In *Zimmerman* and *Big Foot*, injured seamen filed claims against their employers' foreign insurers under Louisiana's direct action statute. *Zimmerman*, 107 F.3d at 345; *Big Foot*, 887 F.2d at 612. As explained above, the direct action statute allows injured individuals to proceed directly against tortfeasors' insurers in certain circumstances. *See* La. Rev. Stat. Ann. § 22:1269.

No. 09-30177

In response to the direct actions, the insurers sought to stay the seamen's suits until the insurers had exercised their contractual right to arbitrate with the seamen's employers. *Zimmerman*, 107 F.3d at 345; *Big Foot*, 887 F.2d at 612. In both cases, we engaged in an analysis that largely focused on the FAA,[5] and we found that a stay was inappropriate.[6]

The facts before us in this case are somewhat different. Unlike *Zimmerman* and *Big Foot*, a foreign insurer is not merely seeking to stay a direct action plaintiff's lawsuit until the conclusion of arbitration with its insured. Instead, Steamship is seeking to compel a direct action plaintiff to arbitrate. Another distinction is that unlike the direct action plaintiffs in *Big Foot* and *Zimmerman*, Todd has already won a judgment against Steamship's insured and is suing Steamship to collect on it. Despite these differences, however, if *Zimmerman* and *Big Foot* were still valid, their reasoning would sweep broadly

---

[5]     The only reference to the Convention in either case is in a brief footnote in *Big Foot*. We noted that "[t]he convention on the recognition and enforcement of foreign arbitral awards may have some application [to this case], but that convention simply adopts the provisions of the Federal Arbitration Act." 887 F.2d at 614 n.3. As both *Zimmerman* and *Big Foot* involved foreign insurers, it is probable that the Convention did have some application in both cases. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005) (explaining that "[t]he Convention applies to international arbitration clauses when," among other factors, "'a party to the agreement is not an American citizen'" (quoting *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 272-73 (5th Cir. 2002)). However, we likely did not focus on the Convention in either case because the foreign insurers were not seeking to compel arbitration with the direct action plaintiffs, but rather to stay their lawsuits until the insurer had completed arbitration with its insured. As explained above, there is no explicit provision authorizing stays in the Convention or its implementing legislation; consequently, parties have had to turn to 9 U.S.C. § 3, a provision of the domestic FAA, for such relief.

[6]     In *Big Foot*, we left open the question of whether the insurer was entitled to a discretionary stay, as opposed to a mandatory stay pursuant to § 3 of the FAA. 887 F.2d at 614.

No. 09-30177

enough to rule out arbitration under the facts of this case. Specifically, in *Zimmerman*, we determined that staying an injured worker's direct action would be inappropriate because:

> The FAA does not require arbitration unless the parties to a dispute have agreed to refer it to arbitration. Likewise, the mandatory stay provision of the FAA does not apply to those who are not contractually bound by the arbitration agreement. Thus, the FAA, the source of the federal policy favoring arbitration, has no application to require direct action plaintiffs to arbitrate or to stay their lawsuits during arbitration.

107 F.3d at 346 (citations omitted).[7] If *Zimmerman* were correct that the federal policy favoring arbitration has no application to direct action plaintiffs, then Steamship could not compel Todd to arbitrate.

In *Carlisle*, however, the Supreme Court rejected the reasoning in *Zimmerman* and *Big Foot*, concluding instead that nonsignatories to arbitration agreements (such as direct action plaintiffs) may sometimes be compelled to arbitrate. It clarified that while the FAA "creates substantive federal law regarding the enforceability of arbitration agreements, . . . background principles of state contract law" control the interpretation of the scope of such agreements, "including the question of who is bound by them." 129 S. Ct. at 1901-02. The Supreme Court then explained that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Id*. at 1902 (quoting 21 R. Lord, *Williston on Contracts* § 57:19 (4th ed. 2001)). As such, *Carlisle* overrules our determination in *Zimmerman* and *Big Foot* that direct action

---

[7] Similarly, in *Big Foot*, we held that the direct action plaintiffs' actions should not be stayed because the plaintiffs were "not parties" to their employer's insurance policy. 887 F.2d at 614.

7

plaintiffs need never arbitrate under federal law because they are not parties to the insurance policies creating an obligation to arbitrate.[8]

That said, one might question whether *Zimmerman*, *Big Foot*, and *Carlisle* are relevant at all in this case, since they all primarily focus on the FAA and not the New York Convention. It is true that the Convention and the FAA differ in certain important respects.[9] However, in both FAA and Convention cases, courts have largely relied on the same common law contract and agency principles to determine whether nonsignatories must arbitrate,[10] and *not* law derived from

---

[8] Since we decided *Zimmerman*, a number of Fifth Circuit panels have recognized that nonsignatories may be bound to arbitrate in certain circumstances. *See, e.g.*, *Bridas S.A.P.I.C. v. Turkmenistan*, 345 F.3d 347, 355-56 (5th Cir. 2003) (listing principles of contract and agency law that may bind nonsignatories to arbitrate); *Fleetwood*, 280 F.3d at 1076 (same). However, "[a]s a general rule, one panel may not overrule the decision of a prior panel, right or wrong, in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court." *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998). While none of our previous panel decisions could have overruled *Zimmerman* and *Big Foot*, the Supreme Court's decision in *Carlisle* has.

[9] For example, in the years since we decided *Zimmerman* and *Big Foot*, we have held that the McCarran-Ferguson Act allows state regulation of insurance to "reverse preempt" the FAA. *See Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006). However, even more recently, we have held that state insurance law cannot reverse preempt the New York Convention and its implementing legislation. *See Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 717 (5th Cir. 2009) (en banc).

[10] *Compare Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 520 n.5, 534-35 & n.18 (3d Cir. 2009) (in Convention case, referring to contract law principles to determine whether nonsignatory must arbitrate), *and Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 659, 662 (2d Cir. 2005) (same), *and Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) (same), *with Carlisle*, 129 S. Ct. at 1899, 1902 (in domestic FAA case, referring to contract law principles to determine whether nonsignatory must arbitrate), *and Fleetwood*, 280 F.3d at 1073-74 (same).

No. 09-30177

statute or treaty.[11] Consequently, *Carlisle* and other cases discussing whether nonsignatories can be compelled to arbitrate under the FAA are relevant for this case governed by the New York Convention.

## B.

In *Zimmerman*, in addition to holding that the FAA does not apply to nonsignatories, we also stated that direct action plaintiffs cannot be forced to arbitrate as third party beneficiaries of insurance contracts because "the direct action statute grants a personal injury claimant a right of direct action against the tortfeasor's insurer on the policy regardless of any provision in the policy forbidding an immediate direct action." 107 F.3d at 346. In this case, Steamship has asserted that Todd must arbitrate his claims because, among other reasons, he is purportedly a third party beneficiary of Delta Queen's insurance policy. We conclude that on remand, the district court is not bound by our statement in *Zimmerman* that direct action plaintiffs cannot be required to arbitrate as third party beneficiaries, as this conclusion was necessarily contingent on our now discredited view that federal arbitration law has no application to nonsignatories.

---

[11]    The Convention does have some bearing on whether nonsignatories can be compelled to arbitrate, as it only applies when "an agreement in writing" provides a basis for arbitration. *See* New York Convention art. II, §§ 1-2. However, we have previously held that an arbitration clause in a contract provides an "agreement in writing" that satisfies the Convention, even when the party being forced to arbitrate has not signed the contract. *See Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669-70 (5th Cir. 1994). Similarly, other courts have held that as long as there is some "agreement in writing," the Convention may require a nonsignatory to arbitrate. *See Int'l Paper*, 206 F.3d at 418 n.7; *Interested Underwriters at Lloyd's v. M/T San Sebastian*, 508 F. Supp. 2d 1243, 1250-51 (N.D. Ga. 2007). In this respect, the Convention is much like the FAA; in *Carlisle*, the Supreme Court held that "[i]f a written arbitration provision is made enforceable against . . . a third party under state contract law, the [FAA's] terms are fulfilled." 129 S.Ct. at 1902.

No. 09-30177

In *Zimmerman*, when we stated that direct action plaintiffs could not be compelled to arbitrate as third party beneficiaries, we justified this conclusion by finding that Louisiana law allows them to proceed without submitting to arbitration.  107 F.3d at 346 (explaining that "the direct action statute grants a personal injury claimant a right of direct action . . . regardless of any provision in the policy forbidding an immediate direct action").  However, if we had found the FAA applicable in *Zimmerman*, we would have had to engage in a deeper analysis: Although state contract law principles control whether nonsignatories can be bound to arbitrate, *see Carlisle*, 129 S. Ct. at 1901-02, state law usually *cannot* invalidate an otherwise enforceable agreement simply because it is an agreement to arbitrate.[12]  Consequently, we would have had to address whether Louisiana's direct action statute can permissibly render nonarbitrable a claim that could possibly be arbitrable otherwise under state contract law principles.[13]  Of course, at the time, we did not need to engage in this analysis, as we had

---

[12]      The Supreme Court has explained that

An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law, save upon such grounds as exist at law or in equity for the revocation of any contract.  Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. [However, a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the FAA].

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (citations and internal quotation marks omitted).  Like the FAA, the Convention also creates "a body of federal substantive law of arbitrability," displacing inconsistent state law.  *Int'l Paper*, 206 F.3d at 417 n.4 (quoting  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[13]      Since Louisiana's direct action statute is arguably a state law regulating insurance, the McCarran-Ferguson Act may allow it to trump federal law in cases governed solely by the domestic FAA and not the New York Convention.  *See Safety Nat'l*, 587 F.3d at 720 n.21; *Inman*, 436 F.3d at 492.

10

No. 09-30177

found the FAA wholly inapplicable to nonsignatories, a position that has now been repudiated by the Supreme Court in *Carlisle*. *Id*. at 1902. As such, *Carlisle* has called into question our statement in *Zimmerman* that direct action plaintiffs cannot be required to arbitrate as third party beneficiaries of insurance contracts. Therefore, the district court is not bound by it on remand. At this stage, however, we take no position on whether Louisiana's direct action statute would run afoul of the New York Convention in this case. We leave this to be determined on remand.

C.

Since the district court, prior to *Carlisle*, properly held that *Zimmerman* controlled the outcome of this case, many of the issues raised by this case were not fully fleshed out in the proceedings below. Therefore, we now remand this case to the district court and suggest several issues, among others, that should likely be considered below.

First, we note that the record does not include a complete copy of Steamship's 1999/2000 Rules, which contain the arbitration clause that Steamship asserts binds Todd. Access to a complete copy on remand would be helpful, since if the terms of an agreement clearly address whether a nonsignatory can be bound to arbitrate, then courts need not inquire whether nonsignatories can be bound under third party beneficiary theory or other doctrines. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008). Certainly, Todd should have the opportunity to review the full Rules and bring to the district court's attention any provisions suggesting that the arbitration clause does not apply to nonsignatories like Todd.

Second, during this appeal, the parties have not addressed what law should apply to determine whether Todd must arbitrate as a nonsignatory. In *Carlisle*, the Supreme Court made clear that state law controls whether an arbitration clause can apply to nonsignatories. 129 S. Ct. at 1902. In particular,

11

No. 09-30177

on remand, the parties should address the effect of the clause in the Delta Queen policy selecting English law to govern "contractual or other substantive or procedural rights and obligations."

Third, the parties have not extensively addressed in their briefing on appeal whether all of Todd's causes of action fall within the scope of the arbitration clause in the Delta Queen's policy with Steamship. *See Graves v. BP Am., Inc.*, 568 F.3d 221, 222-23 (5th Cir. 2009) (per curiam) (explaining that motion to compel arbitration presents the question of whether "the dispute in question falls within the scope of the arbitration agreement"). Specifically, the district court may wish to consider whether the existence of Todd's judgment against Delta Queen has any bearing on whether he must arbitrate with Steamship to collect on this judgment. In conclusion, we stress that the issues raised above are nonexhaustive; we only suggest that these issues should be considered within the framework of a full analysis of whether Todd can be bound to arbitrate.

### III.

Consequently, we REVERSE the district court's denial of Steamship's motion to compel arbitration and REMAND this case to the district court for further proceedings consistent with this opinion.